973 F.2d 735
 15 O.S.H. Cas. (BNA) 1841, 1992 O.S.H.D. (CCH)
P 29,846
 Isabel CABRERA, Manuel Perez, Roberto Ixta, Teresa Mendez,
Andrea Pineda, Rudolfo Castillo, Maria Lizazaga,
et al., Plaintiffs-Appellees,
v.
Lynn MARTIN*, Secretary of Labor, John
Pendergrass, Assistant Secretary of Labor for Occupational
Safety and Health, James Lake, Acting Regional
Administrator, Region IX, United States Occupational Safety
and Health Administration, Defendants-Appellants,
George Deukmejian, Governor of the State of California, Defendant.
Isabel CABRERA, Manuel Perez, Roberto Ixta, Teresa Mendez,
Andrea Pineda, Rudolfo Castillo, Maria Lizazaga,
et al., Plaintiffs-Appellees,
v.
Lynn MARTIN*, Secretary of Labor, John
Pendergrass, Assistant Secretary of Labor for Occupational
Safety and Health, James Lake, Acting Regional
Administrator, Region IX, United States Occupational Safety
and Health Administration, Defendants,
George Deukmejian, Governor of the State of California,
Defendant-Appellant.
 Nos. 90-16665, 90-16666.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 12, 1992.
Decided Aug. 21, 1992.
 
 1
 Robert M. Loeb, U.S. Dept. of Justice, Washington, D.C., for Federal defendants-appellants.
 
 
 2
 Daniel G. Stone and Shelly Mydans, Deputy Atty. Gen., Sacramento, Cal., for State defendant-appellant.
 
 
 3
 Richard M. Pearl, Law Offices of Richard M. Pearl, San Francisco, Cal., for plaintiffs-appellees.
 
 
 4
 Appeal from the United States District Court for the Eastern District of California.
 
 
 5
 Before: FARRIS, RYMER, Circuit Judges, and KENYON**, District Judge, sitting by designation.
 
 KENYON, District Judge:
 
 6
 The Governor of the State of California, the Secretary of the U.S. Department of Labor ("DOL"), and two lower officials at the United States Occupational Safety and Health Administration appeal the district court's judgment awarding the appellees attorney's fees against DOL and the Governor pursuant to 42 U.S.C. § 1988. The appellees, comprised of three labor organizations and seven private sector employees who work in California, charged that the Governor lacked legal authority to unilaterally request the Secretary to withdraw approval of California's occupational safety and health plan ("Cal-OSHA") and sought injunctive relief against the Secretary prohibiting him from approving the Governor's request. The district court issued a preliminary injunction preventing DOL from terminating the state plan, but later dismissed the case as moot after the passage of Proposition 97, a state initiative that required the Governor to continue enforcing Cal-OSHA. Although the court never reached a decision on the merits, it found that the appellees were "prevailing parties" under 42 U.S.C. § 1983 and granted them attorney's fees against both the Governor and the federal defendants pursuant to 42 U.S.C. § 1988. We reverse.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 7
 The federal Occupational Safety and Health Act ("OSHA") was passed in 1970 for the purpose of assuring "safe and healthful working conditions" for all private sector workers. 29 U.S.C. §§ 651-678. Although the Act required DOL to develop and enforce minimum national standards, it envisioned that the states would eventually develop and administer their own occupational safety and health plans and, consequently, exempted state plans from federal preemption if they met certain minimum federal standards. 29 U.S.C. § 651 et seq.
 
 
 8
 OSHA and the regulations promulgated by the Occupational Safety and Health Administration also provide for the termination of state plans. Under 29 C.F.R. § 1955.3(b), "[a] State" can voluntarily withdraw its OSHA plan "by notifying [DOL] in writing." A state plan also can be terminated involuntarily by DOL if the Secretary finds that the state has failed to comply substantially with any provision of the state plan. Before it can terminate a state plan, however, DOL is required to give notice and provide a hearing to the State. 29 U.S.C. § 667(f); 29 C.F.R. § 1955.10 et seq. DOL has interpreted this requirement to provide a right for any interested person to intervene "if the final decision could substantially affect them or the class they represent." 29 C.F.R. § 1955.17(a).
 
 
 9
 California enacted its own occupational safety and health plan ("Cal-OSHA"), which was approved by DOL, in 1973. Following its enactment, California developed enforcement guidelines that were far more stringent and comprehensive than those available under federal law. In 1987, however, the Governor of California, George Deukmejian, decided to eliminate Cal-OSHA due to budgetary constraints and return the responsibility for enforcing occupational safety and health standards to the federal government. In January 1987, Deukmejian submitted a budget proposal for the upcoming fiscal year that excluded any funds for the enforcement or regulatory activities of Cal-OSHA in the private sector. The Governor projected that eliminating Cal-OSHA would save the State $8 million.
 
 
 10
 In accordance with this plan, Governor Deukmejian notified the Secretary of DOL in writing on February 6, 1987, that California would be withdrawing its OSHA plan (and terminating its related federal grants) as of June 30, 1987. The Governor's letter stated that:
 
 
 11
 In accordance with the provisions of 29 CFR 1955.3(b) and 29 CFR 1951.25(d), I hereby notify you of California's withdrawal of its approved occupational safety and health plan and our termination of [the related grants] ... both effective June 30, 1987.
 
 
 12
 The letter also informed DOL that the proposed budget provided no funds for the operation of Cal-OSHA in the private sector. The effect of such a withdrawal, if approved by DOL, would have been the immediate termination of Cal-OSHA, 29 C.F.R. § 1955.4, and the preemption of California's more stringent standards and enforcement practices, as well as the end of any coverage for many California workers.
 
 
 13
 Deukmejiam's decision aroused considerable controversy in the California courts and the legislature. In the spring of 1987, two lawsuits were filed challenging his authority to dismantle Cal-OSHA. In one of those suits, James v. Deukmejian, No. 348657, a Sacramento Superior Court held that the Governor lacked such authority and declared Deukmejian's February letter to DOL to be "null and void".[1] The California legislature, for its part, implicitly challenged Deukmejian's authority by appropriating money for Cal-OSHA in the 1987-88 Budget Bill.
 
 
 14
 Under DOL regulations, the Secretary must publish a notice of withdrawal in the Federal Register when a "State" notifies him in writing that it wants to withdraw its plan. 29 C.F.R. § 1955.3(b). Due to the pending lawsuits and the possibility of legislative action, however, the Secretary was reluctant to withdraw the plan completely and resume exclusive federal authority. Instead, DOL published notice in the Federal Register on June 10, 1987, advising that it would temporarily resume concurrent jurisdiction over private-sector worker safety in California, effective on July 1, 1987. DOL expressly declined to preempt Cal-OSHA, however, until there was a resolution of the dispute over the Governor's legal authority in the California courts and legislature.
 
 
 15
 Following DOL's action in June, the conflict between the Governor and the legislature intensified still further. On July 6, Deukmejian exercised his line-item-veto power to eliminate funding that the legislature had appropriated for Cal-OSHA. In response, the California legislature passed a resolution on September 9, urging DOL not to accept the Governor's letter of withdrawal. When the legislature adjourned on September 11, 1987, however, it had neither appropriated new funds for Cal-OSHA nor overridden the Governor's line-item veto.
 
 
 16
 In light of the fact that Cal-OSHA no longer had funding as of September 11, 1987, DOL decided in late September to change its course and accept the Governor's request to withdraw approval of Cal-OSHA. DOL accordingly prepared a notice to be published in the Federal Register notifying the public that it would resume exclusive federal jurisdiction over private sector worker-safety in California as of October 1, 1987.
 
 The Lawsuit
 
 17
 Upon hearing of DOL's decision, the appellee workers and labor organizations[2] filed this lawsuit against Secretary Brock[3] and two lower officials at the Occupational Safety and Health Administration, John Pendergrass and James Lake, seeking an injunction prohibiting DOL from approving Governor Deukmejian's request to withdraw Cal-OSHA until the legality of that decision had been determined by the California courts. The plaintiffs asserted that under both California and federal law, the word "State" as used in 29 C.F.R. § 1955.3(b) referred to the legislature, rather than the Governor, and that the Governor's letter of February 6, 1987 was thus ineffective as a notice of voluntary withdrawal. Since the federal regulations only provided for "voluntary withdrawal" upon request of the state legislature, the plaintiffs argued that DOL could only withdraw approval of Cal-OSHA through the procedures established for involuntary termination, which require DOL to provide notice and an opportunity for a hearing before an administrative law judge, pursuant to 29 U.S.C. § 667(f) and 29 C.F.R. §§ 1955.1-1955.47.
 
 
 18
 The district court issued a temporary restraining order against the federal defendants on the same day the case was filed, September 30, 1987. A week later, on October 6, plaintiffs filed their first amended complaint, adding Governor Deukmejian as a defendant and seeking declaratory relief that he lacked authority under both state and federal law to unilaterally withdraw Cal-OSHA and that his notice to DOL was thus invalid for purposes of federal law.
 
 
 19
 At the preliminary injunction hearing on October 19, 1987, the Court concluded that "the plaintiffs' position is a substantial one" and subsequently granted an injunction on October 21 restraining DOL "from acting in any manner so as to withdraw approval of [Cal-OSHA], including publishing notice in the Federal Register that such approval has been withdrawn." As a result of that decision, Cal-OSHA remained in existence, continuing to have concurrent jurisdiction with the federal Occupational Safety and Health Administration. DOL did not appeal the injunction order.
 
 
 20
 A year later, in November 1988, California voters repudiated Governor Deukmejian's plan by passing Proposition 97, an initiative mandating that the Governor continue enforcing Cal-OSHA. The plaintiffs and defendants subsequently agreed that plaintiffs would dismiss their lawsuit as moot. Plaintiffs then filed a motion for attorney's fees against the federal defendants under 28 U.S.C. § 2412(d), 42 U.S.C. § 1988, and Cal.Civ.Proc.Code § 1021.5, and against the state defendant under 42 U.S.C. § 1988 and Cal.Civ.Proc.Code § 1021.5.
 
 
 21
 In its February 6, 1990 Order, the district court awarded attorney's fees against both the federal defendants and the Governor under § 1988, but denied plaintiffs' claims under 28 U.S.C. § 2412(d) because DOL's action had not been "substantially unjustified." The Court did not address whether the parties would be entitled to fees under California Code of Civil Procedure § 1021.5. In granting the fees against the federal defendants, the district court found that "[b]y changing course and cooperating with the Governor's office to prepare for Cal-OSHA's withdrawal, the federal defendants" had afforded the Governor "[s]ubstantial and significant cooperation" and had therefore acted "under color of state law" pursuant to 42 U.S.C. § 1983. The district court's order did not make any explicit finding, however, that the federal defendants violated federal law or that Governor Deukmejian violated either state or federal law.
 
 
 22
 After the district court issued its opinion, the parties stipulated that plaintiffs were entitled to $107,000 in attorney's fees, of which the state defendant was liable for $87,000 and the federal defendants for $20,000. The stipulation explicitly preserved the defendants' right to appeal the plaintiffs' entitlement to the fees.
 
 
 23
 The federal defendants appeal the district court's decision awarding attorney's fees on several grounds. First, the federal defendants claim that the district court's premise for awarding fees was flawed because the United States has not waived its immunity from suit and is not a "person" subject to suit under § 1983. Secondly, DOL asserts that the district court erred in finding a violation of § 1983 because the federal defendants neither "acted under color of state law" nor violated federal law. Finally, the federal defendants argue that the plaintiffs cannot be considered prevailing parties under § 1983 because they never even alleged a § 1983 claim until after the case was dismissed as moot and the district court never reached a decision on the "merits" of the case; it merely granted interim relief, preserving the status quo.
 
 
 24
 The State contends, similarly, that the district court erred in awarding attorney's fees under § 1988. Although it acknowledges that Deukmejian was acting "under color of state" law, the State asserts that the district court made no finding--and had no basis for finding--that the Governor violated federal law or deprived the appellees of federally guaranteed rights, a prerequisite for finding liability under § 1983. The State contends, moreover, that the plaintiffs failed to plead a proper claim under § 1983 and cannot be considered a "prevailing party" because they received neither injunctive nor declaratory relief against the Governor. We reverse the district court's opinion on the grounds discussed below.
 
 ANALYSIS
 
 25
 I. Attorney's Fee Award Against the Federal Defendants
 
 
 26
 The district court held that the appellees were entitled to an award of fees from the federal defendants under 42 U.S.C. § 1988, made applicable to the federal defendants by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(b).[4] Section 1988 provides for fee awards to plaintiffs who successfully vindicate their rights under, inter alia, 42 U.S.C. § 1983. In awarding fees to the plaintiffs, the district court found that the federal defendants has violated § 1983 by acting "in concert with the Governor" in implementing his plan to unilaterally withdraw Cal-OSHA.
 
 A. Sovereign Immunity
 
 27
 We must first decide whether the district court erred in finding that the federal defendants violated § 1983. In order to find a violation of § 1983, a district court must find that the defendants acted "under color of state law" and deprived the plaintiffs of their rights under federal law. 42 U.S.C. § 1983. The federal defendants assert, however, that we need not even reach these issues. The DOL contends that the Secretary of Labor and the other federal defendants are immune from suit because the United States has not waived its sovereign immunity and is not a "person" subject to liability under 42 U.S.C. § 1983. Although we need not reach this issue to make our decision, we disagree.
 
 
 28
 The Supreme Court held in Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), that actions for prospective relief are not considered claims against the sovereign, and that state officials sued in their official capacity for prospective relief should be considered "persons" within the meaning of § 1983. Id., 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10. Although the Will case only expressly extends liability under § 1983 to state officials, a well-established line of cases has held that federal officials, who act in concert or conspiracy with state officials to deprive persons of their federal rights, may be held liable for prospective relief under § 1983 when sued in their official capacity. See, e.g., Merritt v. Mackey, 932 F.2d 1317 (9th Cir.1991); Kletschka v. Driver, 411 F.2d 436 (2nd Cir.1969); Jorden v. National Guard Bureau, 799 F.2d 99, 111 n. 17 (3rd Cir.1986) ("federal officials who conspire or act jointly with state officials may be liable under § 1983"); Knights of the KKK v. East Baton Rouge Parish School Board, 735 F.2d 895, 900 (5th Cir.1984); Reuber v. United States, 750 F.2d 1039, 1061 (D.C.Cir.1984). In Merritt v. Mackey, for example, this Circuit held that a federal health official who collaborated with a state official in publishing a report could be held liable under § 1983 since the state defendant had " 'significantly participated in the [federal defendant's] challenged activity.' " 932 F.2d at 1323 (quoting Gibson v. United States, 781 F.2d 1334, 1343 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987)).
 
 
 29
 Moreover, Congress expressly waived whatever sovereign immunity the United States enjoyed from prospective relief when it amended § 702 of the Administrative Procedure Act ("APA") in 1976. 5 U.S.C. § 702. Section 702 now provides a broad waiver of immunity for injunctive actions filed against the federal government. Contrary to the assertions of the federal defendants, this Court has repeatedly found that § 702 waives the sovereign immunity of the United States with respect to any action for injunctive relief under 28 U.S.C. § 1331. See e.g., The Presbyterian Church (U.S.A.) v. United States, 870 F.2d 518, 524-525 (9th Cir.1989) ("[T]hus, on its face, the 1976 amendment of § 702 waives sovereign immunity in all actions seeking relief from official misconduct except for money damages."); Assiniboine and Sioux Tribes v. Bd. of Oil and Gas, 792 F.2d 782, 793 (9th Cir.1986).
 
 
 30
 We therefore reject the federal defendants' argument that they cannot be considered "persons" under § 1983 and are shielded by the United States' sovereign immunity. It is well settled that federal officials sued in their official capacity are subject to injunctive relief under § 1983 if they "conspire with or participate in concert with state officials who, under color of state law, act to deprive a person of protected rights." Scott v. Rosenberg, 702 F.2d 1263, 1269 (9th Cir.1983), cert. denied, 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984).
 
 
 31
 B. "Under Color of State Law"
 
 
 32
 We must now determine whether the district court was correct in finding that the federal defendants "acted under color of state law." Although federal officials acting under federal authority are generally not considered to be state actors, they may be liable under § 1983 if they are found to have conspired with or acted in concert with state officials to some substantial degree. See e.g., Merritt, 932 F.2d at 1323; Sable Com. of California v. Pacific Tel. & Tel., 890 F.2d 184 (9th Cir.1989). In the instant case, the district court found that the federal defendants should be considered state actors because of their "significant and substantial cooperation" with the Governor in accepting his withdrawal of Cal-OSHA. In reaching this decision, the lower court placed special emphasis on the fact that the Secretary changed his policy in mid-stream by deciding in September 1987 to accept Governor Deukmejian's letter of withdrawal and assume exclusive jurisdiction over California's occupational safety matters. The court explained its decision as follows:
 
 
 33
 The [DOL's] initial abstention in favor of the state's determination of its Governor's powers insulated the federal defendants from any action with regard to Cal-OSHA's withdrawal. By changing course and cooperating with the Governor's office to prepare for Cal-OSHA's withdrawal, the federal defendants set the stage for this lawsuit. Had they continued to abstain from the controversy surrounding the Governor's powers under state law, this action would never have been ripe for review.
 
 
 34
 The record reflects substantial cooperation between the state and federal governments, which cooperation carried significant legal implications. Accordingly, I find that the federal defendants acted under color of state law and are liable for attorney's fees.
 
 
 35
 In reviewing the district court's decision, we must apply two different standards of review. The lower court's findings of "historical" fact regarding the federal defendants' cooperation with the Governor are only reversible if they are found to be "clearly erroneous". Merritt, 932 F.2d at 1324. We review de novo the district court's application of the applicable statutory and precedential authority to these facts, however. United States v. McConney, 728 F.2d 1195, 1199-1204 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 36
 The appellees contend, however, that it would be inappropriate for this court to attempt to relitigate the merits of the district court's decision granting attorney's fees. Appellees argue that, under this Circuit's established precedent, the district court's opinion should be affirmed so long as there is "some legal basis" for the plaintiffs' claim--that is, so long as the district court's decision is not "frivolous, unreasonable or groundless." Fitzharris v. Wolff, 702 F.2d 836, 838 (9th Cir.1983) (citations omitted). Appellees therefore contend that they are entitled to attorney's fees so long as they can show that there was a "legal basis" for their claim. Sablan v. Dept. of Finance of N. Mariana Islands, 856 F.2d 1317, 1327 (9th Cir.1988).
 
 
 37
 We agree with the appellees that we should not waste judicial resources by relitigating every aspect of the district court's decision. In the present case, however, we believe that the district court's holding that the federal defendants were acting "under color of state law" is unsupportable under the applicable authorities. Federal officials do not become "state actors" unless "[t]he State has so far insinuated itself into a position of interdependence with ... [the federal officials] that it must be recognized as a joint participant in the challenged activity." Kletschka, 411 F.2d at 449 (quoting Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961)). To transform a federal official into a state actor, the appellees must show that there is a " 'symbiotic relationship' between the [federal defendants] and the state such that the challenged action can 'fairly be attributed to the state.' " Johnson v. Orr, 780 F.2d 386, 390 (3rd Cir.1986) (citing Krynicky v. University of Pittsburgh, 742 F.2d 94, 99 (3rd Cir.1984)). See also Gibson, 781 F.2d at 1343 ("Federal officers acting under federal authority are immune from suit unless the state or its agents significantly participated in the challenged activity.")
 
 
 38
 We find no basis in the record, or in the factual findings contained in the district court's order, to support a holding that the DOL was involved in a "symbiotic relationship" with Governor Deukmejian or that the Secretary of Labor's decision to accept Deukmejian's letter of withdrawal could fairly be attributed to the State as opposed to the federal government. Indeed, the undisputed evidence appears directly to the contrary. The Secretary actively opposed Governor Deukmejian's attempt to terminate Cal-OSHA as evidenced by the fact that he refused to approve the Governor's request to withdraw approval when the Governor first notified DOL of his plan in February, 1987. The Secretary did not finally approve Deukmejian's request and assume exclusive federal jurisdiction in California until after the California legislature adjourned on September 11, 1987, without either providing additional funds for Cal-OSHA or overriding the Governor's line-item veto. The evidence demonstrates, in other words, that the Governor and the federal defendants were involved in an antagonistic relationship, not a "symbiotic" venture. The Governor induced the federal defendants to terminate Cal-OSHA; they did not "act in concert" with him. See NCAA v. Tarkanian, 488 U.S. 179, 196 & n. 16, 109 S.Ct. 454, 464 & n. 16, 102 L.Ed.2d 469 (1988) (holding that state university's cooperation with NCAA, a non-state actor, in disciplining the university's basketball coach did not transform the NCAA into a state actor because the university's "interests" did not coincide with those of the NCAA).
 
 
 39
 The appellees contend, however, that there was ample evidence to support the district court's finding that there was a "substantial degree of cooperative action between the federal and state defendants." Appellees point, in particular, to the fact that Ron Rinaldi, the Director of California's Department of Industrial Relations met or spoke with federal OSHA officials, including the defendants, on numerous occasions in 1987 to discuss the Governor's plans for withdrawing Cal-OSHA.
 
 
 40
 While we acknowledge that the federal defendants met with Governor Deukmejian's agents on several occasions and cooperated with the Governor to fill the gap created by his veto of funding for Cal-OSHA, we do not agree that the federal defendants' contacts and discussions with Rinaldi transformed them into "state actors" whose actions could fairly "be attributed to the state." Johnson v. Orr, 780 F.2d at 390. This was not a case where federal officials conspired or cooperated with state agents to deprive individuals of their federal rights. The federal defendants only resumed jurisdiction over California's occupational health matters out of a need to fill the gap in coverage left by Governor Deukmejian's termination of Cal-OSHA and ensure that California's workers would be adequately protected by federal safety standards. Far from being a symbiotic participant, whose actions could fairly be attributed to the State, we hold as a matter of law that the federal defendants' decision to resume exclusive federal jurisdiction over the State's occupational health and safety matters was taken under color of federal law and that the state played no legally significant role in the challenged activity. Gibson, 781 F.2d at 1343.
 
 
 41
 This holding is consistent with the applicable authorities. We have not found a single precedent which would support a holding that a federal agency acting under its own guidelines could be considered to have acted "under color of state law" merely because it was induced by the actions of a state actor to withdraw a federally financed program. Indeed, the cases cited by the appellees suggest that the state must be a significant participant, if not the chief actor, to transform a federal defendant into a state actor. See e.g., Kletschka, 411 F.2d at 448-49 (the "purpose of § 1983 was to provide a remedy when federal rights have been violated through the use or misuse of a power derived from a State") (emphasis added). In Hampton v. Hanrahan, for instance, the Seventh Circuit held that federal law enforcement officers who conspired with the Chicago Police Department in a raid on the Black Panther Party, acted under "color of state law" because the action was the "joint product of the exercise of a State power and of a non-State power" and the State and its officials played a " 'significant' role in the result." 600 F.2d 600, 623 (7th Cir.1979 (citing Kletschka, 411 F.2d at 449)). In Askew v. Bloemker, by contrast, the Seventh Circuit found that where a group of state law enforcement officers were assigned on a full-time basis to a federal agency, they were acting pursuant to federal authority and not under color of state law. 548 F.2d 673, 677 (7th Cir.1976). The touchstone of this analysis is ultimately "whether there is a sufficiently close nexus between the State and the challenged action of the [federal actors] so that the action of the latter may be fairly treated as that of the State itself." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974).
 
 
 42
 In the instant case, the federal defendants derived their power exclusively from federal law and acted without any significant cooperation or assistance from Governor Deukmejian or his agents. While Deukmejian's unilateral termination of Cal-OSHA was clearly the catalyst which prompted DOL into action, the decision to resume federal jurisdiction and publish notice in the Federal Register was purely federal in character. Secretary Brock's planned announcement to withdraw Cal-OSHA was not the joint product of an exercise of a State and a federal power; it was the unilateral action of a federal actor, acting under color of federal law, who was forced into action by the independent action of a state actor.
 
 
 43
 We therefore reverse the district court's decision holding that the federal defendants violated § 1983 and awarding attorney's fees to the appellees pursuant to § 1988. Since the federal defendants did not act "under color of state law", we need not reach the issue of whether they deprived the appellees of any rights or privileges secured by federal law.
 
 
 44
 C. Attorney's Fees under California Code of Civil Procedure § 1021.5
 
 
 45
 The appellees contend, however, that they are entitled to attorney's fees under California Code of Civil Procedure § 1021.5 even if they are denied fees under 42 U.S.C. § 1988. We reject this argument. Plaintiffs are not entitled to attorney's fees under either federal or California law unless they show that they were the prevailing party in the underlying litigation. See Sablan, supra; Sokolow v. County of San Mateo, 213 Cal.App.3d 231, 261 Cal.Rptr. 520 (1989). Because the appellees' claim that the federal defendants acted under color of state law was groundless, appellees can not be considered the "prevailing party" under either federal or state law. Appellees' request for attorney's fees against the federal defendants pursuant to § 1021.5 is therefore denied.
 
 
 46
 II. Attorney's Fee Award Against the State Defendant
 
 A. § 1988 Award
 
 47
 The State asserts that the district court erred in granting § 1988 attorney's fees against Governor Deukmejian because the plaintiffs failed to allege the factual elements necessary to plead a claim for relief under § 1983. The State claims that the plaintiffs' attempt to seek fees under § 1988 was a mere "afterthought which did not alter the thrust of the case." Although it concedes that Governor Deukmejian was acting "under color of state law" when he sent notice to DOL of his intent to terminate Cal-OSHA, the State asserts that the plaintiffs never proved or even alleged that Deukmejian violated federal law. Furthermore, argues the State, the district court never found a violation of federal law on which to base its award of fees under § 1988.
 
 
 48
 The Supreme Court has stated that only two allegations are required to state a cause of action under § 1983. The plaintiff must allege that (1) some person has deprived him of a federal right; and (2) that the person depriving him of that right acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980). We have recognized in the past, however, that the liberal rules of notice pleading under the Federal Rules of Civil Procedure only require a plaintiff to plead the facts underlying their § 1983 claim, not the statute itself. See e.g., McCalden v. California Library Assn., 919 F.2d 538, 546 (9th Cir.1990). Moreover, when the court is asked to determine the appropriate remedy, the Federal Rules command the court "to grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Fed.R.Civ.P. 54(c); see Thornstenn v. Barnard, 883 F.2d 217 (3rd Cir.1989) (granting plaintiffs attorney's fees under § 1988, even though their complaint pleaded a violation of 48 U.S.C. § 1561, rather than 42 U.S.C. § 1983).
 
 
 49
 We therefore find no reason to reverse the district court on the grounds that the appellees failed to plead § 1983 as a basis of their complaint or because they failed to use the magic words "under color of state law" when bringing their complaint against Deukmejian, a state Governor acting in his official capacity. We agree with the state defendant, however, that the appellees failed to properly allege or show that Governor Deukmejian deprived appellees of rights secured by federal law.
 
 
 50
 The primary objective of the appellees' lawsuit was to obtain an injunction against the federal defendants prohibiting them from terminating Cal-OSHA without providing notice and an opportunity for a hearing pursuant to the applicable statutes and federal regulations. By contrast, the only relief that the appellees sought against the Governor was a declaration that the notice of withdrawal he sent to DOL on February 6, 1987 was invalid for purposes of 29 C.F.R. § 1955.3(b). The appellees never alleged nor proved that Deukmejian violated the federal statute and regulations or deprived them of federally secured rights; they merely alleged that the federal defendants had no basis under either state or federal law to accept the Governor's unilateral notice of withdrawal.
 
 
 51
 After analyzing the applicable statutory and regulatory language, we can find no way in which Governor Deukmejian can be held to have violated federal law by submitting his notice of withdrawal to the Secretary of Labor. By their plain language, section 667(f) of OSHA and section 1955.3 of the OSHA regulations only impose legal obligations on the "Secretary" and the "Assistant Secretary", not on third parties like Governor Deukmejian. Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978) (in interpreting a statute or regulation which is plain and unambiguous on its face, the Court must look first to the plain meaning of the language). Section 1955.3(b) of the federal regulations, for instance, provides that:
 
 
 52
 [u]pon receipt of the State notice [of voluntary withdrawal] the Assistant Secretary shall cause to be published in the Federal Register a notice of withdrawal of approval of the State plan....
 
 
 53
 29 C.F.R. § 1955.3(b). Similarly, § 1955.3(a) of the federal regulations provides that the Assistant Secretary has the sole responsibility for determining whether a state has failed "to comply substantially" with its own occupational safety and health plan and to initiate a "withdrawal proceeding" and provide the requisite notice if the state has not complied with these requirements. 29 C.F.R. § 1955.3(a)(3). Section 667(f) of OSHA provides that the Secretary of Labor, himself, shall notify the state agency of withdrawal of approval if he finds that the agency has failed "to comply substantially" with the state's plan. 29 U.S.C. § 667(f).
 
 
 54
 We therefore can discern no way in which Governor Deukmejian can be held to have violated 29 U.S.C. § 667(f) or its related federal regulations. The plain language of the federal statute and regulations only regulates the duties and responsibilities of the Secretary and the Assistant Secretary of the Department of Labor, not the Governor of California. Even assuming, arguendo, that Governor Deukmejian's notice of voluntary withdrawal was invalid under 29 C.F.R. § 1955.3(b), he did not violate the appellees' federal rights merely by submitting this notice. Section 1955.3 only grants the plaintiffs rights against the federal defendant--namely, the right not to have Cal-OSHA withdrawn voluntarily pursuant to 29 C.F.R. § 1955.3 if the Governor's notice was invalid under federal law.[5]
 
 
 55
 The appellees asserted in their oral argument, however, that Governor Deukmejian could be found liable under § 1983 even if the applicable statutes and regulations did not explicitly regulate his behavior. The appellees argued that Governor Deukmejian had deprived them of their federal rights by inducing or cooperating with the federal defendants to withdraw Cal-OSHA without complying with the applicable federal procedures. We reject this argument. Even assuming, for the sake of argument, that Deukmejian could be found liable on such a legal theory, the appellees have failed to prove an essential element of such a claim: that Governor Deukmejian conspired with or acted in concert with the federal defendants. Indeed, we have expressly rejected the district court's finding that the federal defendants cooperated with or acted at the direction of Governor Deukmejian. Thus, Governor Deukmejian could not be held liable on this theory even if we found that the federal defendants had deprived the appellees of federally guaranteed rights or privileges.[6]
 
 B. Attorney's Fees Under § 1021.5
 
 56
 We also reject the appellees' request for attorney's fees pursuant to California Code of Civil Procedure § 1021.5. Because we have held that Governor Deukmejian did not deprive appellees of any federal rights or privileges--and there has been no finding that he violated any state law--the appellees are not a prevailing party under either state or federal law. Therefore they are not entitled to fees under § 1021.5. See Sablan v. Dept. of Fin. of N. Mariana Islands, 856 F.2d 1317, 1325 (9th Cir.1988); Sokolow v. County of San Mateo, 213 Cal.App.3d 231, 261 Cal.Rptr. 520 (1989).
 
 CONCLUSION
 
 57
 The district court's decision awarding attorney's fees against both Governor Deukmejian and the federal defendants is therefore REVERSED.
 
 
 
 *
 Lynn Martin is substituted for her predecessor, Elizabeth H. Dole, as Secretary of Labor pursuant to Fed.R.App.P. 43(c)(1). The plaintiffs-appellees filed their original complaint against William Brock, Dole's predecessor as Secretary of Labor
 
 
 **
 The Honorable David V. Kenyon, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Later, in August 1987, the California Court of Appeal accepted writs for two more lawsuits challenging Deukmejian's authority to dismantle Cal-OSHA. See California State Employees Assoc. v. Deukmejian (Civ. No. C-002664); and Ixta v. Rinaldi (Civ. No. C-002805)
 
 
 [2]
 The plaintiffs who filed the original complaint in this case on September 30, 1987 were: Isabel Cabrera, Manuel Perez, Roberto Ixta, Teresa Mendez, Andrea Pineda, Rudolfo Castillo, and Marie Lizazaga. Plaintiffs Cabrera, Perez, Ixta, Mendez, Pineda, and Castillo are California farmworkers. Plaintiff Lizazaga was a garment industry worker who had recently been fired from her job when the lawsuit was filed. The remaining plaintiffs/appellees were added when the first amended complaint was filed on October 6, 1987. The added plaintiffs are: John F. Henning, Executive Secretary-Treasurer of the California Labor Federation, AFL-CIO; the California Labor Federation, AFL-CIO; Local Lodge No. 1781 of the International Association of Machinists & Aerospace Workers; and the California State Employees' Association
 
 
 [3]
 Brock was the Secretary of Labor at the time that plaintiffs filed their complaint. At the time this appeal was filed, however, Elizabeth H. Dole was the Secretary of Labor
 
 
 [4]
 Under § 2412(b), the United States is subject to an award of attorneys' fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."
 
 
 [5]
 Appellees charge that Governor Deukmejian's February 6 letter of withdrawal was invalid under 29 C.F.R. § 1955.3(b) because only the legislature, not the Governor, can act on behalf of the "State" to voluntarily withdraw a state plan. Appellees therefore argue that the federal defendants had an obligation under federal law to ignore Deukmejian's letter or, at the very least, to initiate "involuntary withdrawal" proceedings, which provide interested parties with notice and an opportunity for a hearing. 29 C.F.R. § 1955.3(a)
 
 
 [6]
 Because we have no need to determine whether the federal defendants violated federal law in order to dispose of this case, we have refrained from doing so. We note, however, that the appellees would have to surmount a high burden to show that the federal defendants had deprived them of rights guaranteed by OSHA and its accompanying regulations. Under the agency review doctrine announced in Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984), administrative agencies are given broad discretion to construe their own regulations and authorizing statutes. The courts are thus prohibited from substituting their own construction of a statutory or regulatory provision for a reasonable interpretation made by the administrator of the agency. In the instant case, the appellees would have had to show that the federal defendants' interpretation of § 667 of OSHA and § 1955 of the federal regulations was unreasonable in order to prevail against the federal defendants