FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROSEMERE NEIGHBORHOOD
ASSOCIATION, a Washington non-
profit corporation,
               *Plaintiff-Appellant,*

         v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, an agency of
the United States Department of
the Interior; STEPHEN L. JOHNSON,
in his official capacity as
Administrator of the
Environmental Protection Agency,
            *Defendants-Appellees.*

No. 08-35045

DC No.
CV 07-5080 BHS

OPINION

Appeal from the United States District Court
for the Western District of Washington
Benjamin H. Settle, District Judge, Presiding

Argued and Submitted
April 14, 2009—Seattle, Washington

Filed September 17, 2009

Before: Betty B. Fletcher, A. Wallace Tashima, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Tashima

13499

## COUNSEL

Christopher Winter, Crag Law Center, Portland, Oregon, for the plaintiff-appellant.

Rebecca Shapiro Cohen, Assistant U.S. Attorney, Seattle, Washington, for the defendants-appellees.

Marybelle Nzegwu, San Francisco, California, for *amicus curiae*, Center on Race, Poverty & the Environment.

## OPINION

TASHIMA, Circuit Judge:

Rosemere Neighborhood Association ("Rosemere") appeals the district court's dismissal of its action against the Environmental Protection Agency ("EPA") on mootness grounds. We conclude that the district court erred in dismissing the case, because the voluntary cessation exception to mootness applies. We therefore reverse.

### I.    Factual and Procedural Background

Rosemere is a non-profit community organization in Clark County, Washington. It works to improve the provision of municipal services in low-income communities, and has had a contentious relationship with the City of Vancouver, Washington (the "City") over these issues.

In 2003, Rosemere filed an administrative complaint against the City with the EPA's Office of Civil Rights ("OCR"). The EPA established the OCR to investigate complaints of discrimination in the use of federal funds, pursuant to Title VI of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000d-1; 40 C.F.R. pt. 7. In its complaint, Rosemere alleged that the City failed properly to utilize EPA funds to address lingering environmental problems in low-income and minority communities in the City.

According to the regulations governing the OCR, any party may file a complaint alleging discrimination which the OCR "will review" for acceptance or rejection within 20 days. 40 C.F.R. § 7.120(d)(1)(i). If the OCR accepts the complaint, it shall issue preliminary findings within 180 days of the beginning of the complaint investigation. 40 C.F.R. § 7.115(c)(1).

Shortly after Rosemere filed its complaint, the City opened an inquiry into Rosemere that eventually culminated in the revocation of Rosemere's status as a formal neighborhood association. Rosemere then filed a second complaint with the OCR in December 2003, alleging retaliation by the City.[1] The OCR did not accept or reject this second complaint within twenty days as the regulations require, ostensibly because of "severely limited office resources and a substantial volume of competing programmatic demands." In fact, some eighteen months lapsed with no action by the OCR, until Rosemere filed suit in federal district court in June 2005 against the EPA, seeking to compel the OCR to accept or reject the retaliation complaint. About six weeks later, the OCR notified Rosemere that it had accepted the complaint for investigation. The EPA then moved to dismiss Rosemere's action as moot. The district court granted the motion, concluding that the delay was nothing "more than an isolated instance of untime-

---

[1]The OCR eventually dismissed Rosemere's first complaint, because Rosemere could not establish the required nexus between EPA funds and the City's actions, a decision not at issue in the present case.

liness and oversight," and there was no evidence that the EPA's failure to act was a "practice" the EPA might resume in the future.

Following the OCR's acceptance of the complaint, the parties by all accounts worked together to pursue the investigation. By February 2007, however, some eighteen months after accepting the complaint, the OCR still had not issued preliminary findings or recommendations, and Rosemere filed the present lawsuit under the Administrative Procedure Act ("APA") to compel action.[2] *See* 5 U.S.C. § 706(1). Rosemere sought a declaratory judgment that the EPA had violated the regulatory deadlines of 40 C.F.R. § 7.115, as well as an injunction compelling the EPA to complete the investigation. About ten weeks later, on April 30, 2007, the OCR completed its investigation into the complaint and sent a notification letter to Rosemere. The OCR concluded that the timing of the City's actions against Rosemere was "suspicious," but did not amount to impermissible retaliation, thereby closing the complaint. The EPA then moved to dismiss Rosemere's action as moot.

Rosemere conducted limited discovery into the OCR's history of handling complaints in responding to the EPA's mootness argument. That discovery uncovered data suggesting that

---

[2]The EPA argues that Rosemere seeks relief that is no longer available under APA § 706(1) because of the EPA's voluntary actions; thus, that the EPA is immune from suit. Section 702 waives the government's sovereign immunity for actions, such as this one, that seek injunctive relief. *See Cabrera v. Martin*, 973 F.2d 735, 741 (9th Cir. 1992). In turn, § 706 prescribes standards for judicial review and demarcates what relief a court may (or must) order. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004); *see also Forest Guardians v. Babbitt*, 174 F.3d 1178, 1186-87 (10th Cir. 1999). Where a court initially has jurisdiction under the APA, a proposition that the EPA does not challenge in this case, the existence of statutory limitations on the remedies that the court may impose does not defeat jurisdiction. The question of what remedies are available and appropriate is one that we need not and do not address at this time.

the OCR had missed its regulatory deadlines in almost every complaint filed with the agency in recent years.

On November 12, 2007, Rosemere filed an amended complaint in the action, adding a claim for injunctive relief to compel the EPA to process all Rosemere complaints filed in the next five years within the regulatory deadlines. Rosemere stated that it intended to refile its original Title VI complaint against the City in the near future, with better documentation of the funding nexus between the City and the EPA. On the basis of this stated intention, as well as the evidence of the pattern of delay obtained through discovery, Rosemere argued that the case was not moot and that, in any event, the voluntary cessation exception to mootness applied. The district court rejected these arguments and granted EPA's motion to dismiss. It concluded that, in the absence of any pending complaints by Rosemere with the OCR, Rosemere could not establish the sufficient likelihood of future delays necessary to invoke the voluntary cessation exception. This appeal followed.

## II.   Discussion

**[1]** We review a district court's dismissal of an action for mootness de novo. *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir. 1994). Federal courts lack jurisdiction to consider moot claims. *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992). "A claim is moot if it has lost its character as a present, live controversy." *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997). In general, when an administrative agency has performed the action sought by a plaintiff in litigation, a federal court "lacks the ability to grant effective relief," and the claim is moot. *See Pub. Util. Comm'n v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). Courts have long recognized, however, a "voluntary cessation" exception to mootness. Under this doctrine, the mere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleg-

ing mootness can show that the "allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citation omitted). Without such an exception, "the courts would be compelled to leave [t]he defendant . . . free to return to his old ways." *Porter v. Bowen*, 496 F.3d 1009, 1017 (9th Cir. 2007) (alterations in original) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

**[2]** The party alleging mootness bears a "heavy burden" in seeking dismissal. *Laidlaw*, 528 U.S. at 189. It must show that it is "absolutely clear" that the allegedly wrongful behavior will not recur if the lawsuit is dismissed. *See id*. In the case at bench, this requirement means that the EPA must demonstrate that Rosemere will not encounter further regulatory delays in the processing of its complaints. EPA could plausibly satisfy this burden in one of two ways: first, by showing that it is extremely unlikely that Rosemere will file another complaint (and thus come before the agency again); or, second, by showing that, even if Rosemere does file such a complaint, the EPA will meet its regulatory deadlines in resolving it.

Before this court, the EPA has chosen to rely on the first alternative argument.[3] It contends that, because Rosemere has no pending complaints before the agency, the prospect of fur-

---

[3]In the district court, the EPA argued that it had taken a number of steps to ensure prompt compliance with the regulatory deadlines, including hiring more staff and adjusting its complaint-processing procedures. The EPA does not raise this argument on appeal though, and we do not consider it. We do note, however, that the EPA's efforts at reform, while laudable, would not automatically moot the case, because "announcement of an intention to change or adoption of a plan to work toward lawful behavior" is generally insufficient to defeat an exception to mootness. *See* 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.7, at 351-52 (3d ed. 2008) (footnote omitted).

ther delay is merely "speculative." To defeat mootness, the EPA further argues, Rosemere must show to a "certainty" that it will file another complaint.

There are several problems with the EPA's argument. For one, it impermissibly attempts to shift the burden to Rosemere to defeat mootness. As we have stated, it is the EPA that bears the "heavy burden" in this case. *See id*. The EPA cannot meet this burden solely by claiming that Rosemere has not done enough to show the likelihood of further delays. *See FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1238 (9th Cir. 1999) (noting that the assertion that the plaintiff "did not offer any admissible evidence that the [defendants] were likely to repeat any wrongful conduct . . . is not sufficient to satisfy the [defendants'] burden" to show mootness). Rather, the EPA must demonstrate why repetition of the wrongful conduct is highly unlikely. *Cf., e.g.*, *Luckie v. EPA*, 752 F.2d 454, 458-59 (9th Cir. 1985) (finding mootness because the permanent relocation of residents exposed to an asbestos dump meant there was "very little chance" the plaintiffs would encounter a second asbestos dump and "again be subjected to EPA's regulatory and enforcement scheme").

**[3]** Put another way, the burden is not on Rosemere to show it *will* file another complaint. The burden is on the EPA to show that Rosemere *will not* do so. The EPA's attempt to reverse this burden is insufficient to show mootness. *See Affordable Media*, 179 F.3d at 1238; *see also Armster v. U.S. Dist. Court*, 806 F.2d 1347, 1359 (9th Cir. 1986) ("The bare assertion by the Justice Department in its mootness motion that this situation will not recur . . . . [is not] sufficient to deprive this Court of its constitutional power to adjudicate this case."). More importantly, when there is an argument about whether a plaintiff will again encounter a challenged activity, this court has required little more than what Rosemere has already supplied: a stated intention to resume the actions that led to the litigation.

For example, in *Porter*, 496 F.3d at 1014-15, the California Secretary of State threatened several plaintiffs with prosecution for establishing "vote-swapping" websites during the 2000 election. The plaintiffs challenged the Secretary of State in court, and the Secretary argued that the case was moot because the plaintiffs had already shut down their sites. *Id.* at 1017. We concluded that the voluntary cessation exception nonetheless applied. To show the likelihood of recurrence, it was sufficient that the plaintiffs "stated that they will set up vote-swapping websites" in the future, and that other plaintiffs "expressed their interest" in using such sites. *Id.* at 1017 n.6. We required nothing more from the plaintiffs to demonstrate that they would again encounter the challenged government behavior. Rather, it was the Secretary of State who had "the 'heavy burden' of establishing that it is 'absolutely clear' that California will not threaten to prosecute" the plaintiffs if they created such sites in the future. *Id.* at 1017.

Similarly, in *Southern Oregon Barter Fair v. Jackson County*, 372 F.3d 1128 (9th Cir. 2004), we considered a non-profit community fair's First Amendment challenge to the county's permitting procedures. The impetus for the action was a tumultuous encounter between the fair and the county in 1996, but the county argued that the case was moot because the fair had not applied for another permit or engaged in any fair preparations since then. *Id.* at 1134. In an argument strikingly reminiscent of the one the EPA now makes, the county contended that "the possibility that the Fair will actually obtain funding and a site [for a new fair] is speculative." *Id.* We first allowed that the case might be moot "if the Fair had entirely ceased to operate, left the business, and no longer sought or intended to seek a license." *Id.* However, failing that, the case was not moot. The fair's "stated intention to return to business," combined with its ongoing efforts to arrange another gathering, were sufficient to demonstrate the likelihood of recurrence. *Id.* The burden fell on the county to prove that the barriers to holding another fair were " 'insur-

mountable.' " *Id.* (quoting *Clark v. City of Lakewood*, 259 F.3d 996, 1012 (9th Cir. 2001)).

**[4]** Drawing on *Jackson County*, we note that if Rosemere had dissolved its organization or ended its regulatory reform efforts, we might be more hospitable to EPA's mootness argument. But Rosemere has done no such thing. It has stated its intention to file another complaint with the EPA, which is sufficiently similar to what we required of the plaintiffs in *Jackson County* and *Porter* to defeat mootness. In fact, Rosemere has done more, supplementing its claim with a declaration by one of its officers that Rosemere will likely file another complaint once it is assured of timely processing by the EPA — lest it direct its limited resources at fruitless efforts. Given this stated intent, the burden is on the EPA to show that there is "very little chance" of further delays in the processing of the complaints, *cf. Luckie*, 752 F.2d at 458, or that Rosemere faces an "insurmountable" hurdle to filing another complaint, *see Jackson County*, 372 F.3d at 1134. The EPA has done neither.

**[5]** Our conclusion that this case is not moot is also supported by an additional fact: What the district court initially classified as an "isolated instance of untimeliness" has since bloomed into a consistent pattern of delay by the EPA. Rosemere has twice encountered that pattern whereby it files a complaint, hears nothing for months, and then only after filing a lawsuit does the EPA respond. This "litigation history" is probative of the likelihood of future delays. *See Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174 (9th Cir. 2002). We are also intent on ensuring that "the government cannot escape the pitfalls of litigation by simply giving in to a plaintiff 's individual claim without renouncing the challenged policy, at least where there is a reasonable chance of the dispute arising again between the government and the same plaintiff." *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State*, 74 F.3d 1308, 1311 (D.C. Cir. 1996), *vacated on other grounds*, 519 U.S. 1 (1996).

**[6]** Finally, we note that Rosemere's experience before the EPA appears, sadly and unfortunately, typical of those who appeal to OCR to remedy civil rights violations. As indicated earlier, discovery has shown that the EPA failed to process a *single* complaint from 2006 or 2007 in accordance with its regulatory deadlines. *Amicus* the Center on Race, Poverty & the Environment has helpfully provided further examples of such delay. This pattern of delay as shown by the experiences of other parties before an agency can be relevant to the mootness analysis, *see Biodiversity*, 309 F.3d at 1174, and helps convince us that this action should go forward. *See also In re Ctr. for Auto Safety*, 793 F.2d 1346, 1352 (D.C. Cir. 1986) (holding that agency's "pattern of delay in violation of the unambiguous statutory command" was sufficient for the voluntary cessation exception to apply, notwithstanding the agency's "bald assertion" of future timeliness).

**[7]** We thus conclude that the district court erred in dismissing Rosemere's action. As the Seventh Circuit held, "when the relief sought is an order to the delaying agency to hurry up," but the agency acts "to moot [the] case by acting before [the] claim for relief can be decided," such a sequence "begs for an exception to the ordinary rules of mootness." *Lucien v. Johnson*, 61 F.3d 573, 574-75 (7th Cir. 1995).[4]

---

[4]We also note that the EPA's argument that Rosemere's claim for prospective injunctive relief is unripe is without merit, for several reasons. First, Rosemere likely faces further delays from the agency and therefore has a "realistic danger of sustaining a direct injury as a result of" the agency's disregard of its own regulations. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (articulating test for ripeness). Second, as stated above, the jurisdictional discovery yielded an extensive record of the EPA's pattern of delay, so that little, if any, further factual development is necessary. *See Chang v. United States*, 327 F.3d 911, 922 (9th Cir. 2003) (noting ripeness of claim when the "issues remaining are legal and do not require further factual development"). Finally, Rosemere faces hardship if this case cannot be adjudicated, because it cannot effectively direct its litigation resources until it knows whether OCR will act promptly on its complaints. *See id.* ("The uncertain state of the law is

## III.   Conclusion

**[8]** Rosemere's complaintis not moot. The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

sufficient hardship to prompt judicial review."). For these reasons, Rosemere's claim is ripe. *See also* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3532.6, at 635 (3d ed. 2008) ("Protracted failure to act also may be subject to review in order to determine whether action has been wrongfully withheld.") (collecting cases on ripeness).