HOLLOWAY, Circuit Judge,
dissenting:
I respectfully dissent. It is well settled that the government has the burden of proof with respect to sentence enhancements. See, e.g., United States v. Munoz-Tello, 531 F.3d 1174, 1181 n. 12 (10th Cir.2008). Consequently, mere assumptions without adequate support in the record are insufficient. Id. at 1182-83. I cannot agree that the government carried its burden of proof with respect to the sentencing enhancement at issue here.
The government’s case on the critical issue of the “stolen” gun rested entirely on the three exhibits which were admitted without objection — Exhibits 2, 3 and 4. Exhibit 3 shows that the offense gun had been purchased in 1999 by Dennis White; the exhibit includes the serial number of the offense gun. Exhibit 4 shows that in 2006, a Glock pistol, serial number unknown, had been stolen from a garage in Lehi, Utah belonging to Greg White (the son of Dennis White). With these facts established, the government still needed to *697 provide the last link in the logical chain: some evidence that the gun stolen from Greg White’s garage was the same gun that Dennis White had purchased in 1999.
Such evidence was needed, in my view, because Exhibits 3 and 4 were insufficient to support a reasonable inference that the stolen gun was the offense gun. To reach the desired conclusion based on the fact that Dennis White had purchased the offense gun in 1999, and a similar gun had been stolen from Greg White in 2006, would require speculation, not reasoned, probabilistic analysis. Therefore, it seems to me that the issue turns on whether Exhibit 2 provided the critical, missing linkage.
In my view, Exhibit 2 provides nothing at all. This one-page exhibit is an excerpt from an incident report, possibly from the Defendant’s arrest on the current charge. The author of the report is not identified. The report includes this:
Wyoming detectives provided me a report which explains how they learned this firearm in question [ ] was sold by Sportsman’s Warehouse to Dennis White, and then stolen from Dennis’s son Greg White, who resided at 377 W 200 S in Lehi, UT., at the time of the theft, see attached report.
I spoke with Lt. Jeff Magnusson with Lehi Police, who told me the firearm in question was reported stolen by Greg White as stated, ... see attached for further details.
Otherwise, Exhibit 2 reports that at the time of the theft Mr. Cox lived in Lehi “in close proximity” to the location of the theft. It is particularly noteworthy that there is no attachment to this exhibit, nor was any explanation given for the absence of the attachment referenced twice in the exhibit.
The majority correctly notes that hearsay is admissible in sentencing hearings subject to the requirement that the evidence must have some indicia of reliability. Exhibit 2, on which the government’s case must turn, has no indicia of reliability as to the information relayed from Wyoming authorities to the unidentified author. It is undisputed that Greg White did not report the serial number of the gun that had been stolen from his garage. How did the Wyoming authorities determine that the stolen gun was the same weapon as the offense gun? What was the source of the information? Did the Wyoming authorities learn this, or did they merely surmise that it might be the case? Did the Wyoming authorities interview either Dennis White or Greg White? We are given no such essential information. Apparently the majority agrees that this information is untrustworthy, because if it were accepted, it would resolve the issue without need for any further analysis.
The majority opines that defense counsel conceded at the sentencing hearing that Dennis White transferred his Glock to his son, Greg. (Thus assuming that Dennis White owned only one Glock, an assumption which finds no support in the evidence.) Maj. op. at 694 & n. 2. But I would hold that defense counsel conceded only that Dennis White had transferred a gun to his son. While I certainly agree with the majority that courts are entitled to rely on concessions by counsel, that principle surely demands that we be clear about what it is that counsel has conceded. The majority offers one statement made by counsel at the sentencing hearing with no context. Because of the uncertainties inherent in oral remarks made in the crucible of an adversary hearing, it is only fair to look at the context to be certain that we have interpreted this single remark correctly.
*698 That context, to me, makes it an impermissible leap of faith to say that counsel was conceding that the stolen gun was the same gun that Dennis White had transferred to his son, Greg. The majority’s interpretation of counsel’s concession is fundamentally inconsistent with the position taken by counsel at the hearing, as shown by the exchanges that followed directly after the truncated quote on which the majority relies. The majority quotes one question from the district judge and a one-sentence response by defense counsel:
The Court: I take it you don’t dispute that — maybe I shouldn’t — do you dispute the information that the father transferred the gun to the son?
Mr. Douglas [Defense Counsel]: I take it from the report and I would not dispute that.
The dialogue continued:
The Court: Then the son reported stolen a nine millimeter Glock.
Mr. Douglas: That is right, but we don’t know whether that is the Glock that he borrowed from his father. We do not know if his father owned more than—
At that point, the judge interrupted counsel and asked if he had any evidence that “he” (apparently referring to the father, Dennis White) owned more than one Glock. Counsel responded, correctly, that the burden of proof was on the government, not his client, and contended that the government “cannot meet its burden without an improper assumption based on no evidence.”
Just moments later (apparently, it being four pages later in the transcript), counsel again argued that the government had failed to offer evidence to support its contention that the gun stolen from Greg White in 2006 was the offense gun purchased by Dennis White in 1999. Counsel stated that the only government witness at the hearing had offered no testimony “that he asked Dennis or Greg ... whether they owned more Glocks or more firearms.”[5]
Because I would read counsel’s statements in context, I would not find that counsel had conceded that Dennis White had transferred the offense gun to Greg White. But even if the majority’s reading were correct, the government still produced no evidence that the stolen gun was the offense gun. As Mr. Cox’s counsel pointed out, the government produced no evidence to support the conclusion, other than the third-hand speculation contained in Exhibit 2. There is no evidence that the stolen gun was the only gun, or the only Glock pistol, owned by Greg White.
The conclusion that the pistol stolen from Greg White in 2006 was the offense gun cannot be the result of probabilistic reasoning, as the majority claims. If Greg White owned two Glocks, probabilistic reasoning would suggest a fifty percent possibility that the stolen gun was the offense gun. Such an assumption is insufficient to establish that the contention was more likely true than not true. And if Greg White owned more than two Glocks, quite clearly the contention that the stolen gun was the offense gun would be less likely to be true.
Defense counsel was indisputably correct when he argued to the district court that the burden of proof was on the government. Mr. Cox had no obligation to produce evidence that Greg White indeed owned more than one Glock. The government asked the district court to adopt a finding which lacked support in the evi *699 dence. In making that finding, the district court erred.
In United States v. Munoz-Tello, 581 F.3d 1174 (10th Cir.2008), the defendant had been convicted of transporting undocumented aliens after a tragic accident in which four of the defendant’s passengers had been killed. The government pressed for a sentencing enhancement based on the premise that the defendant had recklessly created a substantial risk of bodily injury. The district court agreed that the enhancement applied, basing his conclusion on, inter alia, a finding that by overloading the vehicle, the defendant had adversely affected its handling or maneuverability. Id. at 1182-88.
It may have been true in Munoz-Tello that overloading the vehicle had adversely affected its handling or maneuverability, but there was no evidence to support such a finding, so we reversed. Similarly, here it may be the case that the stolen gun was the offense gun, but the evidence is insufficient to prove it.
The majority’s attempt to find support for its holding in a statement made by Mr. Cox to investigators is unpersuasive to me because it rests on a credibility finding made by the majority, a function which of course is reserved for the trial court. As reflected in the PSR, Mr. Cox told an investigator that he had purchased the offense weapon for $100 in a transaction which occurred in the parking lot of a service station. The district judge did not rely in any way on this evidence; indeed, the judge did not even comment on this evidence. Nor did the government make any argument to the district court regarding Mr. Cox’s account of how he had acquired the offense gun.
Because Mr. Cox’s explanation of his purchase was neither the basis for any argument by the government in the district court nor the subject of any finding by the district court, the majority’s reliance on this evidence is troublesome. Even more troubling is the majority’s characterization of Mr. Cox’s account as “frankly implausible.” While I disagree with that characterization, the more salient point for this court is that fact-finding, including of course the decision whether to credit any specific evidence, is for the district court, not for us.
The majority acknowledges that Mr. Cox’s account, if believed, would show that the offense gun had not been acquired from the Whites. Maj. op. at 694.[6] Yet the majority also reasons that Mr. Cox’s account, “in conjunction with the other evidence ... makes it more likely than not that the gun was stolen....” Id. at 696. This conclusion is simply illogical if Mr. Cox’s account is believed. Thus, it is clear that the majority’s reasoning depends on finding that Mr. Cox’s account is not credible.
For the reasons stated, I must respectfully dissent. I would reverse and remand for a new sentencing hearing.

. The judge told counsel that he could ask the agent that question. Counsel did so, but the agent stated that because he had not been the agent assigned to the investigation, he had no contact with either of the Whites.

. Elsewhere in the opinion, however, the majority characterizes Mr. Cox’s account as one that merely "differs somewhat from the government’s theory.” Maj. op. at 696, n. 4.