*1315
 
 CANBY, Circuit Judge:
 

 John Mackey appeals the district court’s judgment, following a bench trial on remand from this court, in favor of Knowlton Merritt in Merritt’s action against Mackey, et al. Merritt’s action charges that Mack-ey, a federal official, violated his due process rights in improperly coercing Merritt’s private employer to fire him. Merritt cross-appeals. We affirm all of the rulings of the district court except for the award of a multiplier in the award of attorney’s fees.
 

 BACKGROUND
 

 Merritt is a former counselor supervisor with Klamath Alcohol and Drug Abuse, Inc. (“KADA”), a private nonprofit corporation. He was fired from that position, partly as a consequence of actions taken by Mackey and Steven Vincent. Mackey was the Area Alcoholism Coordinator for Indian Health Services (“IHS”), a federal agency. Vincent was a Regional Alcohol Specialist with the State of Oregon’s Mental Health Division. Mackey and Vincent had jointly evaluated the management of KADA, and had concluded that Merritt had failed to perform adequately. Their report recommended that further funding of KADA be conditioned on Merritt’s dismissal. The KADA Board of Director’s dismissed Merritt without a pre-termination hearing. The circumstances of this dispute are related in this court’s earlier decision in this ease,
 
 Merritt v. Mackey,
 
 827 F.2d 1368 (9th Cir.1987)
 
 (“Merritt I”).
 

 Merritt brought this action against several defendants alleging various claims. Among those claims was one against Vincent under 42 U.S.C. § 1983, and one against Mackey pursuant to
 
 Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics,
 
 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Both of those claims alleged deprivation of liberty and property without due process. The district court granted summary judgment in favor of Vincent and Mackey on the ground that Merritt had not stated a claim for deprivation of liberty upon which relief could be granted. The court also decided, after this first trial, that
 
 Parratt v. Taylor,
 
 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), precluded Merritt’s claim that his property interest in continued employment could not be extinguished without a pretermination hearing. Finally, the district court ruled that Vincent and Mackey were protected from liability by the doctrine of qualified immunity.
 

 On appeal, a divided panel of this court affirmed the grant of summary judgment as to the liberty deprivation claims, but reversed and remanded as to the property deprivation claims.
 
 Merritt I,
 
 827 F.2d 1368 (9th Cir.1987).
 
 Merritt I
 
 first held that Merritt had a protected property interest in his continued employment with KADA. It then concluded that under the circumstances of this case, Merritt’s right to due process was not satisfied by a post-termination remedy, and that he was entitled to “a meaningful hearing at a meaningful time” to challenge his dismissal.
 
 Id.
 
 at 1371. This court also held that Vincent and Mackey were not entitled to qualified immunity because they knowingly acted outside the scope of their employment and violated a clearly established due process right.
 
 Id.
 
 at 1372-73.
 

 On remand, the district court ruled that Merritt was entitled to a pretermination hearing and that his due process rights were violated because he had not received such a hearing. The court also found, however, that Merritt would have been terminated even if he had been provided with an adequate predeprivation hearing. Further, the district court concluded that Vincent and Mackey were not entitled to qualified immunity, under this court’s mandate in
 
 Merritt I.
 

 After a bench trial, the district court awarded Merritt $35,000 in damages as compensation for emotional distress arising from the due process deprivation. It concluded that he was not entitled to either lost wages or punitive damages because he would have been terminated even if he had been afforded a pretermination hearing. In addition, the court awarded Merritt approximately $100,000 in attorney’s fees pursuant to 42 U.S.C. § 1988. The court reasoned that Mackey, although a federal
 
 *1316
 
 official, was liable under Section 1988 because he acted jointly with Vincent, a state official, to • violate Merritt’s rights. The court awarded Merritt fees for 90% of the hours he requested at $125 per hour. It also enhanced the fee by one-third.
 

 Mackey appeals the district court's rulings that he is not entitled to qualified immunity, and that he is liable for attorney’s fees under 42 U.S.C. § 1988. He also challenges as excessive the amount of damages and attorney’s fees awarded. Merritt cross-appeals,
 
 [1]
 
 contending that the district court failed to recognize that his rights to due process were violated not only by the deprivation of a timely hearing, but also by unreasonable governmental interference with his property rights in his chosen occupation. Consequently, Merritt claims, the court improperly denied him damages for lost wages and punitive damages. We affirm the district court as to all issues raised by these appeals.
 

 ANALYSIS
 

 I.
 
 Qualified Immunity
 

 In
 
 Merritt I,
 
 this court held that neither Vincent nor Mackey was entitled to qualified immunity because “their conduct exceeded the scope of their authority and because they violated Merritt’s clearly established constitutional rights.” 827 F.2d at 1373. On remand, the district court held that this court’s prior holding was “the law of the case.” Mackey now asks this court to reconsider the issue, and hold that Vincent and Mackey were entitled to qualified immunity. We agree with the district court that the ruling in
 
 Merritt I
 
 is the law of the case and decline to address the merits of qualified immunity, except as necessary to determine whether we ought to leave the matter as settled by
 
 Merritt I.
 

 “[U]nder the ‘law of the case’ doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case.”
 
 Kimball v. Callahan,
 
 590 F.2d 768, 771 (9th Cir.),
 
 cert. denied,
 
 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). The doctrine is discretionary, not mandatory.
 
 United States v. Houser,
 
 804 F.2d 565, 567 (9th Cir.1986). It merely expresses the practice of courts generally to refuse to reopen that which has been decided, and is not a limitation of the courts’ power.
 
 Id.
 
 (citing
 
 Messenger v. Anderson,
 
 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912));
 
 United States v. Maybusher,
 
 735 F.2d 366, 370 (9th Cir.1984), ce
 
 rt. denied,
 
 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). “[T]he prior decision of legal issues should be followed on a later appeal ‘unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice.’”
 
 Kimball,
 
 590 F.2d at 771-72 (citing
 
 White v. Murtha,
 
 377 F.2d 428, 431 (5th Cir.1967)).
 
 [2]
 

 Mackey contends that two of these exceptions apply here. First, he contends that
 
 Anderson v. Creighton,
 
 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), effected a change in the appropriate standard for determining qualified immunity, which the panel in
 
 Merritt I
 
 failed to consider. Second, he contends that the decision in
 
 Merritt I
 
 court was clearly erroneous and would work a manifest injustice. We disagree with both arguments.
 

 A.
 
 A change in the law
 

 Anderson v. Creighton
 
 did not change controlling authority on this issue so as to require us to reconsider the merits of Mackey’s qualified immunity defense. First,
 
 Anderson
 
 was decided three months prior to
 
 Merritt,
 
 so there was no
 
 intervening
 
 change of law. More important,
 
 Anderson
 
 did not
 
 change
 
 the controlling
 
 *1317
 
 standard as Mackey suggests.
 
 Anderson
 
 clarified and refined the law articulated in
 
 Harlow v. Fitzgerald,
 
 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In
 
 Merritt I,
 
 this court relied on
 
 Harlow.
 
 Examination of its analysis indicates that it complies with the
 
 Anderson
 
 “clarification.”
 

 The Supreme Court in
 
 Anderson
 
 said, “our holding today does not extend official qualified immunity beyond the bounds articulated in
 
 Harlow
 
 and our subsequent cases_” 483 U.S. at 641-42 n. 3, 107 S.Ct. at 3039-40 n. 3. It was
 
 Harlow
 
 that first established that qualified immunity is based on the “objective legal reasonableness” of the defendant’s conduct. 457 U.S. at 818-19, 102 S.Ct. at 2738-39.
 

 The
 
 Merritt I
 
 opinion recognized that immunity attaches to official action unless that action “ ‘violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known.’ ” 827 F.2d at 1373 (quoting
 
 Harlow,
 
 457 U.S. at 818, 102 S.Ct. at 2738).
 
 Anderson
 
 emphasized the level of specificity at which that inquiry must be made, requiring that “[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent.”
 
 Anderson,
 
 483 U.S. at 640, 107 S.Ct. at 3039.
 
 Anderson
 
 goes on to require that the unlawfulness of the official’s activity must be apparent in light of “the circumstances with which [the official] was confronted.”
 
 Id.
 

 The
 
 Merritt I
 
 court had the
 
 Anderson
 
 decision before it, and the language of its opinion indicates that it exercised the specificity of scrutiny required by
 
 Anderson:
 

 Vincent and Mackey testified that they knew they had no authority to require KADA to fire Merritt. Because they knowingly acted outside the scope of their authority, they are not entitled to qualified immunity.... Vincent and Mackey should have known that they could not cause Merritt’s summary dismissal without violating his .due process rights.
 

 Merritt I,
 
 827 F.2d at 1373.
 

 B.
 
 Clearly erroneous and manifest injustice
 

 We also reject Mackey’s other argument that the
 
 Merritt I
 
 qualified immunity holding should not be considered the law of the case. Mackey contends that it is “manifestly unjust” to hold that he violated a clearly established right, when the dissent in
 
 Merritt I
 
 strongly disputed the very existence of that right.
 
 See Merritt I,
 
 827 F.2d at 1374. In essence, Mackey asks how a right can be “clearly established” for government officials when appellate judges cannot agree to its existence.
 
 [3]
 

 Mackey poses a question with seductive implications for qualified immunity doctrine, but it is not the question upon which this appeal should turn. We are not presented as a matter of first impression with the question of which view in
 
 Merritt
 
 / — that of the majority or that of the dissent — was correct. That issue was thrashed out in
 
 Merritt I
 
 itself, and we owe a certain deference to the view that prevailed. The question before us on this appeal is whether the majority decision in
 
 Merritt I
 
 is so
 
 clearly
 
 incorrect that we are justified in refusing to regard it as the law of the case.
 
 See United States v. Houser,
 
 804 F.2d at 568.
 

 Although there was substantial prece-dential support for the
 
 Merritt I
 
 majority opinion,
 
 [4]
 
 and it has been cited approvingly
 
 *1318
 
 since,
 
 [5]
 
 Mackey contends that the very fact of a dissent establishes manifest error in the majority’s conclusion that the right in issue was clearly established. We cannot accord a dissent that much probative power.
 

 Dissent or no, two judges ruled that the right in question was clearly established and that reasonable officials would have known that their actions infringed that right. Those two judges may well have been correct. To hold that they
 
 could not
 
 have been correct simply because a dissent was filed would be to hold the majority hostage to the dissent. One judge would have a veto that would prevent any majority of two from denying a claim of qualified immunity.
 

 The dissent alone does not compel us, therefore, to conclude that the decision in
 
 Merritt I
 
 was incorrect. Nor do we approach the qualified immunity question as if it were being presented for the first time. At this stage of the litigation, it is incumbent upon Mackey to convince us not only that the majority decision in
 
 Merritt I
 
 was wrong, but that it was clearly wrong. This he has failed to do. Mackey has not demonstrated clear error by the
 
 Merritt I
 
 majority in applying this principle to the specific facts of his case. We accordingly find no justification for departing from our usual policy of adhering to the law of the case.
 
 [6]
 

 II.
 
 Damages
 

 A.
 
 Merritt’s appeal
 

 The district court awarded Merritt damages for emotional suffering, but did not award him lost wages or punitive damages. Merritt cross-appeals, arguing that the district court erroneously identified the due process violation which he suffered.
 

 The district court confined its finding of a due process violation to KADA’s failure to provide Merritt with a pretermination hearing. That finding was based on this court’s holding in
 
 Merritt I
 
 that Merritt “was deprived of his property interest in continued employment when the state and federal agents intentionally coerced KADA to fire him.”
 
 Merritt I,
 
 827 F.2d at 1372. Merritt contends that such a holding requires that his compensable injury includes, not only the deprivation of his right to a pretermination hearing, but also the
 
 *1319
 
 deprivation of his property interest in continuing employment itself.
 

 The district court found, however, that Merritt would have been fired regardless of Mackey’s involvement. Unless that finding is clearly erroneous, it limits Merritt’s damages to those arising from the denial of procedural due process only, and precludes an award of damages for deprivation of the employment itself, a loss not caused by Mackey.
 
 Carey v. Piphus,
 
 435 U.S. 247, 260-66, 98 S.Ct. 1042, 1050-54, 55 L.Ed.2d 252 (1977);
 
 See Alexander v. City of Menlo Park,
 
 787 F.2d 1371, 1375 (9th Cir.1986),
 
 cert. denied,
 
 479 U.S. 1032, 107 S.Ct. 879, 93 L.Ed.2d 833 (1987).
 

 We cannot say that the district court s trading that Merritt would have been fired anyway was clearly erroneous. Although the evidence conflicted, there was ample support for the district court’s finding. We therefore conclude that the district court did not err in refusing to award Merritt damages for his loss of employment.
 
 [7]
 

 B.
 
 Mackey’s appeal
 

 Mackey also appeals the district court’s damage award. He contends that Merritt is entitled to no damages, in spite of his loss of a pretermination hearing, because any injury sustained was caused by his loss of employment. Mackey contends that because the district court found that Merritt’s discharge was justified and would have occurred regardless of Mackey’s intervention, he is liable for no damages.
 

 Merritt can recover for mental and emotional distress caused by the denial of procedural due process if he proves actual injury.
 
 Carey v. Piphus,
 
 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1977);
 
 Chalmers v. City of Los Angeles,
 
 762 F.2d 753, 761 (9th Cir.1985). Here, the district court reviewed extensive evidence of actual damages arising from Merritt’s “being terminated without adequate opportunity to be heard or to protest his termination.” It found Merritt’s evidence credible, and awarded $35,000 damages. The district court thus awarded damages, not for Merritt’s loss of employment, but for his denial of a hearing before he was discharged.
 

 We review the district court’s computation of damages for clear error.
 
 See Galindo v. Stoody Co.,
 
 793 F.2d 1502, 1516 (9th Cir.1986). In light of the evidence offered by Merritt, we are not prepared to say that the district court’s award was clearly erroneous.
 

 III.
 
 Attorney’s Fees
 

 The district court ordered Mackey, as well as Vincent, to pay Merritt’s attorney’s fees, in the amount of $99,856.39, pursuant to 42 U.S.C. § 1988. Mackey contends that, as a federal official, he is not liable for attorney’s fees under 42 U.S.C. § 1988, and, alternatively, that the fees awarded here were excessive.
 

 A.
 
 Mackey’s liability for fees under § 1988
 

 Section 1988 allows the court to award attorney s fees to the prevailing party in an action brought under 42 U.S.C. § 1983. Actions filed under § 1983 require state action. Mackey, as an individual or as a federal official, is, thus, exempt from Section 1988 liability unless he “conspire[d] with or participate^] in concert with state officials who, under color of state law, act[ed] to deprive a person of protected rights.”
 
 Scott v. Rosenberg,
 
 702 F.2d 1263, 1269 (9th Cir.1983),
 
 cert. denied,
 
 465 U.S. 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984). Such liability will not attach unless “the state or its agents significantly participated in the challenged activity.”
 
 Gibson v. United States,
 
 781 F.2d 1334, 1343 (9th Cir.1986),
 
 cert. denied,
 
 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).
 

 The district court found that Mackey was acting under color of state law because he
 
 *1320
 
 was involved in a joint action with Vincent, a state official. “Historical” factual findings underlying that holding are reviewed for clear error. The district court found that “Mackey and Vincent jointly evaluated KADA (and plaintiff), and jointly agreed to require plaintiffs termination.” Opinion, Mar. 6, 1989. The final report resulting in Merritt’s termination (and this litigation) was issued under state letterhead, signed by both Mackey and Vincent. The district court’s finding was not clearly erroneous; the form of that report accurately reflected what the investigation was — a joint collaboration between a state and federal official.
 

 We review de novo the district court’s application of these facts to statutory and precedential authority leading to the district courts finding that “state action” was present here.
 
 United States v. McConney,
 
 728 F.2d 1195, 1199-1204 (9th Cir.) (en banc),
 
 cert.
 
 denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). We agree with the district court that Mackey is liable for attorney’s fees under Section 1988, because he acted in concert with Vincent, a state official. Vincent “significantly participated in the challenged activity.”
 
 Gibson v. United States,
 
 781 F.2d 1334, 1343 (9th Cir.1986),
 
 cert. denied,
 
 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987).
 
 [8]
 

 B.
 
 Amount of attorneys’ fees awarded
 

 Mackey alternatively argues that the fee award of nearly $100,000 was excessive. We review this award for an abuse of discretion.
 
 See Hensley v. Eckerhart,
 
 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983);
 
 Blum v. Stenson,
 
 465 U.S. 886, 898-901, 104 S.Ct. 1541, 1548-50, 79 L.Ed.2d 891 (1984). The district court provided a thorough and thoughtful explanation of the lodestar fee at which it arrived. It discounted for hours that it deemed to be unreasonable. We reject Mackey’s claim that the district court abused its discretion in failing to find that more hours were excessive.
 

 We conclude, however, that the district court granted a multiplier of 1.33 on improper grounds. Even though the district court properly recognized that some of the factors derived from
 
 Kerr v. Screen Extras Guild, Inc.,
 
 526 F.2d 67, 70 (9th Cir.1975),
 
 cert. denied,
 
 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), were properly subsumed in the lodestar figure,
 
 see Cabrales v. County of Los Angeles,
 
 864 F.2d 1454, 1464 (9th Cir.1988), it nevertheless relied on impermissible grounds for enhancement. The time involved is clearly subsumed in the lodestar figure, and the difficulty of the case is similarly inappropriate as a ground of enhancement.
 
 See Fadhl v. City and County of San Francisco,
 
 859 F.2d 649, 651 n. 2 (1988). Finally, the district court relied upon the risk inherent in Merritt’s case. A majority of the Supreme Court has held, however, that risk in the individual case is not a proper ground for a multiplier.
 
 Pennsylvania v. Delaware Valley Citizens’ Council,
 
 483 U.S. 711, 734, 107 S.Ct. 3078, 3091, 97 L.Ed.2d 585 (1987) (concurring opinion of Justice O’Connor);
 
 see Fadhl,
 
 859 F.2d at 650 n. 1 (Justice O’Connor’s concurring opinion constitutes Court’s holding in
 
 Delaware
 
 Valley). Enhancements for risk are only appropriate when supported by a showing that such enhancement is “necessary to attract competent counsel in the relevant community” for the class of cases in question.
 
 Delaware Valley,
 
 483 U.S. at 734, 107 S.Ct. at 3091 (concurring opinion of Justice O’Connor). There is neither a finding nor evidence here to establish that
 
 *1321
 
 necessity. We therefore reverse that portion of the district court’s fee awards that includes multipliers of 1.33, and we remand the fee awards to the district court for recalculation and reentry of the awards without the multiplier.
 

 CONCLUSION
 

 The fee awards entered by the district court are reversed insofar as they include a multiplier of 1.33, and the fee awards are remanded to the district court for recalculation and reentry of the awards without the multiplier.
 

 In all other respects, the judgment of the district court is affirmed. Each party will bear its own share of the regular costs on appeal.
 

 As prevailing party in this litigation, Merritt is entitled to an award of fees on appeal pursuant to 42 U.S.C. § 1988, subject to reduction in light of Merritt’s unsuccessful cross-appeal. Application is to be made as provided in 9th Cir. Rule 39-1.
 

 AFFIRMED IN PART; REVERSED IN PART; REMANDED.
 

 [1]
 

 . Vincent also appealed, but later voluntarily dismissed his appeal.
 

 [2]
 

 . This formulation has since been repeatedly quoted in this circuit.
 
 See, e.g., League of Women Voters of California v. F.C.C.,
 
 798 F.2d 1255, 1256 (9th Cir.1986);
 
 United States v. Houser,
 
 804 F.2d 565, 568 (9th Cir.1986);
 
 Handi Investment Co. v. Mobil Oil Corp.,
 
 653 F.2d 391, 392 (9th Cir.1981).
 

 [3]
 

 . In support of his argument, Mackey cites
 
 Harris v. Young,
 
 718 F.2d 620, (4th Cir.1983), where the Fourth Circuit stated, "It would not be fair to hold a state official liable for not fulfilling ‘clearly established’ obligations when a federal Circuit Court of Appeals was unable to unanimously decide the same issue.”
 
 Id.
 
 at 624. That case is inapposite because the
 
 Harris
 
 court was faced with the issue, in the first instance, of whether a government official had violated a clearly established right. To that issue of whether a right was "clearly established," the
 
 Harris
 
 court considered relevant an earlier split decision
 
 in a separate case. Harris
 
 is not relevant here, since it did not deal with the entirely separate concerns of whether an earlier appellate decision in
 
 the same case
 
 should be final.
 

 [4]
 

 . The majority opinion relied primarily on the Supreme Court's opinion in
 
 Greene v. McElroy,
 
 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), that an employee of a private employer
 
 *1318
 
 “has the right to be free from unauthorized actions of government officials which substantially impair his property interests.”
 
 Id..,
 
 at 493, n. 22, 79 S.Ct. at 1412, n. 22. The majority went on to conclude that Merritt's employment contract, including a "for cause” termination clause, was not simply a "unilateral expectation" of continued employment but a “legitimate claim of entitlement" to due process procedural protections as established by Oregon law (citing
 
 Board of Regents v. Roth,
 
 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972)).
 

 [5]
 

 .
 
 See, e.g., Roth v. Veteran’s Administration of United States,
 
 856 F.2d 1401, 1407 (9th Cir.1988) (citing
 
 Merritt I
 
 for proposition that qualified immunity does not protect public officials who deprive employees of a property interest in their employment);
 
 Love v. U.S.,
 
 871 F.2d 1488, 1495 (9th Cir.1989) (citing
 
 Merritt I
 
 for proposition that a deprivation of property in violation of the due process clause states a viable claim for damages under the constitution);
 
 Bateson v. Geisse,
 
 857 F.2d 1300 (9th Cir.1988) (citing
 
 Merritt I
 
 for the proposition that interference that causes a due process violation may be actionable under 42 U.S.C. § 1983). All of these opinions were unanimous and none of them questioned the logic or holding of
 
 Merritt I.
 

 Mackey contends that this court’s Memorandum Disposition in
 
 Johnson v. Serv-Air, Inc.,
 
 833 F.2d 1016 (9th Cir.1987), is directly in conflict with the
 
 Merritt I
 
 majority holding, demonstrating that that holding is "clearly erroneous.” Because
 
 Johnson
 
 is not directly “relevant under the doctrines of law of the case, res judicata, or collateral estoppel,” Ninth Circuit Rule 36-3 (1989), it cannot be considered as precedent.
 
 See DiMartini v. Ferrin,
 
 889 F.2d 922, 929 (9th Cir.1989) (court refused to consider
 
 Johnson
 
 as support for the proposition that due process violations not clearly established).
 

 [6]
 

 . Mackey also argues that adhering to
 
 Merritt I
 
 will cause "manifest injustice." This argument is simply a reprise of his "clearly erroneous” argument. He argues that because the majority holding is "clearly erroneous" (by virtue of a dissent),
 
 for that reason
 
 it works a "substantial injustice" on
 
 Mackey.
 
 We reject that argument because we find no clear error in the majority decision in
 
 Merritt I.
 
 Moreover, we would depart from the law of the case only if we found clear
 
 and
 
 manifest injustice.
 
 See Houser,
 
 804 F.2d at 568.
 
 See Moore v. James H. Matthews & Co.,
 
 682 F.2d 830, 833-34 (9th Cir.1982).
 

 [7]
 

 . Merritt also contends that the district court erred in failing to award punitive damages for Mackey’s violation of his right to continued employment. Without any evidence that Mackey acted willfully or recklessly in disregard of Merritt’s due process rights, we are unprepared to overturn the district court’s denial of punitive damages.
 

 [8]
 

 .
 
 Scott v. Rosenberg,
 
 702 F.2d 1263 (9th Cir.1983), ce
 
 rt. denied,
 
 465 U.S. 1075, 1078, 104 S.Ct. 1439, 79 L.Ed.2d 760 (1984), is inapposite. In
 
 Scott,
 
 this court held that federal officials had not participated in "state action" when the FCC and the California Attorney General separately investigated the plaintiff. In that case, any basis for a finding of joint activity was limited to the sharing of information: “At most, the [federal] employees requested information from, offered to exchange, and did exchange information with the California attorney general's office. ... This, without more, is not enough to establish that their conduct was under color of state law."
 
 Id.
 
 at 1269.
 
 See also Nat'l Collegiate Athletic Ass'n v. Tarkanian,
 
 488 U.S. 179, 196 n. 16, 109 S.Ct. 454, 464 n. 16, 102 L.Ed.2d 469 (1984) (NCAA not liable under § 1988 as joint actor with state university; the two “were antagonists, not joint participants”).