**James Edward HEGLER,**
**Petitioner–Appellant,**

v.

**Robert G. BORG, Warden; Dan Lungren,**
**Respondents–Appellees.**

No. 94–55450.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1995.

Decided March 27, 1995.

Charles G. Bakaly, III, Morgan, Lewis & Bockius, Los Angeles, CA, for petitioner-appellant.

Frederick C. Grab, Deputy Atty. Gen., Los Angeles, CA, for respondents-appellees.

Before: TROTT, FERNANDEZ, and T.G. NELSON, Circuit Judges.

TROTT, Circuit Judge.

## OVERVIEW

California state prisoner James Edward Hegler appeals the district court's decision to dismiss his 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his conviction and sentence for murder. Hegler contends the district court erred by treating the violation of his derivative Sixth Amendment constitutional right to be present at the reading of trial testimony to the jury during deliberations as a harmless "trial error," rather than a "structural error." We have jurisdiction pursuant to 28 U.S.C. § 2253, and we affirm.

## BACKGROUND

1. *The Law*

The United States Supreme Court in *Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), divided the class of constitutional errors that may occur during the course of a criminal proceeding into two categories: trial error and structural error. Structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Id.* at 310, 111 S.Ct.

at 1265. Accordingly, where a criminal proceeding is undermined by a structural error the, "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence," and the defendant's conviction must be reversed. *Id.* Trial error, on the other hand, is error "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Id.* at 307–08, 111 S.Ct. at 1263–64.

Until recently, federal courts applied the *Chapman* harmless error standard to all criminal convictions tainted by trial error. *See Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Under this test "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. While the *Chapman* standard remains applicable to criminal convictions challenged on direct appeal, the Supreme Court recently declared that a less strict standard is appropriate when a state criminal conviction is attacked collaterally. *See Brecht v. Abrahamson,* ——— U.S. ———, ——— ——————, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993). Thus, in *Brecht* the Supreme Court held that a habeas petitioner is not entitled to relief unless the record demonstrates the trial error " 'had substantial and injurious effect or influence in determining the jury's verdict.' " *Id.* at ———, 113 S.Ct. at 1722 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)).

### 2. *Facts and Prior Proceedings*

Hegler was charged with first degree murder in the shooting death of Kerry James during an illegal drug transaction. At trial, Jeanetta Thomas provided key testimony linking Hegler to the murder. After the jury began its deliberation, the jurors asked to hear Thomas's testimony again. Because Hegler's attorney had explicitly declined the

opportunity, neither Hegler nor his attorney were present when the court reporter read the testimony to the jury. The jury returned a guilty verdict.

The California Court of Appeal affirmed Hegler's conviction for first degree murder, and the California Supreme Court denied Hegler's petition for review. Having exhausted his state law remedies, Hegler then filed a petition for writ of habeas corpus in federal district court. The district court dismissed the petition, and Hegler appealed.

In *Hegler v. Borg ("Hegler I"),* 990 F.2d 1258 (9th Cir.1993), a panel of this court determined Hegler had not waived his right to be present during the reading of the trial testimony, and his absence from that proceeding was constitutional error. The court further determined that "there is nothing in the record to overcome the presumption that the error was prejudicial." *Id.* at 1258. Accordingly, the panel remanded "for further proceedings to determine if the error was harmless," and warned that the "state must carry its burden [to show harmless error beyond a reasonable doubt] or the writ must issue." *Id.* The *Hegler I* decision was filed on April 6, 1993. On April 21, 1993, the Supreme Court filed *Brecht v. Abrahamson,* ——— U.S. ———, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), wherein the Court announced a new harmless error standard for determining when a habeas petitioner is entitled to relief.

### 3. *The District Court Decision*

On remand, the district court held an evidentiary hearing [1] to assess whether the constitutional error affected the jury's verdict. The district court examined the court reporter who at trial was responsible for reading back the testimony to the jury. The court reporter explained she was trained to read back testimony without using inappropriate voice inflection, word emphasis, facial expression, or body language; however, she stated she had no independent recollection of reading back testimony during Hegler's trial. She demonstrated her technique to the district court by reading, from her stenographic

---

1. The evidentiary hearing was conducted by the Honorable Carolyn Turchin, Magistrate Judge. Because the district court adopted the magistrate judge's findings, conclusions, and recommendations, we refer to the court as the district court.

notes, a portion of the trial testimony. The district court noted that the court reporter conducted the readback in a professional style, and found her to be a credible witness. Although the court reporter made two errors during the readback demonstration, the district court observed that at the time the testimony was read to the Hegler jury, a trial transcript was not available and Hegler therefore would have been unable to detect such errors.

The district court also examined four of the jurors. Each juror recalled that the court reporter's readback was professional and that the substance of the readback was not materially different from the actual testimony of the witness during trial.

The district court held that the evidence did not warrant the grant of habeas relief. The district court declined Hegler's invitation to construe the constitutional error as structural error. The district court concluded that the law of the case doctrine precluded a determination inconsistent with *Hegler I's* implicit characterization of the constitutional error as trial error.

Applying the standard announced by the Supreme Court in *Brecht,* the district court found that the record did not demonstrate that the trial error had a substantial and injurious effect or influence in determining the jury's verdict. While acknowledging that *Hegler I* instructed the district court to determine whether the trial error was harmless beyond a reasonable doubt, the district court nevertheless concluded that *Brecht* was the proper standard to employ because it represented an intervening change in the law which excused the application of the law of the case doctrine. Accordingly, the district court entered judgment dismissing Hegler's petition with prejudice.

### STANDARD OF REVIEW

The decision whether to grant or deny a petition for habeas corpus is reviewed de novo. *Sanders v. Ratelle,* 21 F.3d 1446, 1451 (9th Cir.1994). "To the extent it is necessary to review findings of fact, the clearly erroneous standard applies." *Thomas v. Brewer,* 923 F.2d 1361, 1364 (9th Cir.1991).

### DISCUSSION

Hegler argues the district court erred by failing to classify the violation of his "presence right" as structural error. The government claims the district court correctly concluded it was foreclosed from considering the nature of the constitutional error because a panel of this court in *Hegler I* implicitly categorized Hegler's absence as trial error. Similarly, the government contends the law of the case doctrine precludes our reconsideration of the panel's decision.

### 1. *The Law of the Case*

 "Under the law of the case doctrine, one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case." *Merritt v. Mackey,* 932 F.2d 1317, 1320 (9th Cir.1991) (internal quotations and brackets omitted). Although an appellate panel's observance of the doctrine is discretionary, a prior decision should be followed unless (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial. *Id.* The doctrine, however, applies only to issues considered and actually decided by the first court. *United States v. Cote,* 51 F.3d 178, 181 (9th Cir.1995). "Although the doctrine applies to a court's explicit decisions as well as those issues decided by necessary implication, it clearly does not extend to issues an appellate court did not address." *Id.* (citations and internal quotations omitted).

Applying these principles, we think it would be inappropriate to accord binding effect to the panel's decision in *Hegler I.* The panel grounded its conclusion on an analysis that neither acknowledged nor discussed the trial error, structural error dichotomy. There is no assurance the panel considered the nature of the error in question before directing the district court to apply the harmless error standard. In light of this uncertainty, consideration of Hegler's argument is warranted.

## 2. *Structural Error Analysis*

■ The Supreme Court "has recognized that most constitutional errors can be harmless." *Fulminante*, 499 U.S. at 306–07, 111 S.Ct. at 1262–63 (listing examples of trial error). Only in those limited cases where the constitutional deprivation affects "the framework within which the trial proceeds," is the integrity of trial process so compromised that the "criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Id.* at 310, 111 S.Ct. at 1265. Certain constitutional violations, however, will always invalidate the conviction. *McKaskle v. Wiggins*, 465 U.S. 168, 177–78 n. 8, 104 S.Ct. 944, 950–51 n. 8, 79 L.Ed.2d 122 (1984) (violation of the right to self-representation at trial); *Gideon v. Wainwright*, 372 U.S. 335, 344–45, 83 S.Ct. 792, 796–97, 9 L.Ed.2d 799 (1963) (the total deprivation of the defendants right to counsel); *Tumey v. Ohio*, 273 U.S. 510, 531–32, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927) (trial by a biased judge); *Sheppard v. Rees*, 909 F.2d 1234, 1237–38 (9th Cir.1989) (denial of the right to be informed of the nature and cause of the criminal accusation).

■ Hegler argues that the constitutional deprivation he suffered fits within that class of cases which can never be analyzed for harmless error. This characterization, however, is contrary to the Supreme Court's discussion in *Fulminante*. Indeed, the Court cited with approval to *Rushen v. Spain*, 464 U.S. 114, 117–18 & n. 2, 104 S.Ct. 453, 454–55 & n. 2, 78 L.Ed.2d 267 (1983), in support of the proposition that the denial of a defendant's right to be present during criminal proceedings can be trial error. *Fulminante*, 499 U.S. at 306–07, 111 S.Ct. at 1262–63.

In *Rushen*, the Supreme Court held to be harmless a trial judge's *ex parte* communication with a juror. *Rushen*, 464 U.S. at 117–19, 104 S.Ct. at 454–56. Although the petitioner asserted that his right to be present at critical trial proceedings and his right to counsel had been violated, the Court observed that "[t]hese rights, as with most constitutional rights, are subject to harmless-error analysis, . . . unless the deprivation, by its very nature, cannot be harmless." *Id.* at 118 n. 2, 104 S.Ct. at 455 n. 2 (citations omitted). The Court warned that the idea an *ex parte* communication "can never be harmless error ignores [the] day-to-day realities of courtroom life and undermines society's interest in the administration of criminal justice." *Id.* at 119, 104 S.Ct. at 456.

■ Thus, *Fulminante* and *Rushen* require us to consider the nature of a "presence error" in the context of the specific proceeding from which the defendant was excluded. In the usual case, such an error will be susceptible to harmless error analysis, but a defendant's absence from certain stages of a criminal proceeding may so undermine the integrity of the trial process that the error will necessarily fall within that category of cases requiring automatic reversal.

In this circuit we have identified two critical phases of a criminal proceeding where the defendant's absence constitutes structural error. In *Hays v. Arave*, 977 F.2d 475 (9th Cir.1992), we held that *in absentia* sentencing is a structural error that requires automatic reversal of the defendant's conviction, and in *Rice v. Wood*, 44 F.3d 1396 (9th Cir.1995), we concluded that a defendant's absence from the return of a death verdict is a structural defect in the criminal proceedings that is not subject to harmless error analysis. Both *Rice* and *Hays* are distinguishable from the present case.

Our decision in *Hays* rested on the ability of the defendant to "affect[ ] each and every aspect of that crucial phase of his criminal adjudication." *Hays*, 977 F.2d at 479. Because of the potential for the defendant's presence to influence the course of the sentencing proceeding, we found it impossible to quantify the impact of the defendant's absence. *Id.* at 480–81. Finally, we concluded that "unconstitutional *in absentia* sentencing cannot be affirmed on the basis of harmless error [ ] because the right to be present at one's sentencing proceedings is a 'fundamental' one." *Id.* at 481.

We relied on our reasoning in *Hays* to determine the nature of the error presented in *Rice*. Again, the determinative factor was the defendant's ability to affect the proceed-

ing that occurred in his absence: "[I]t was critically important that the return of the death verdict and the polling of the jurors take place in Rice's presence, where each juror would have to look Rice in the eye and reaffirm his or her jury room vote by declaring in open court that Rice did not deserve to live." *Rice*, 44 F.3d at 1402. We also noted that like the right to be present at sentencing, the right of the defendant to be present during the return of a death verdict is fundamental. *Id.*

 In contrast to the constitutional error that infected the criminal proceedings in *Hays* and *Rice*, Hegler's absence from the reading of trial testimony did not render the trial process defective. Because the purpose of the proceeding from which Hegler was excluded was to allow jurors to hear again testimony given at trial, the ability of Hegler to influence the process was negligible. The only role Hegler could have played, had he been present, was as an observer. *See id.* at 1405 (Wallace, C.J., concurring in part and dissenting in part) (suggesting that where defendant has no role to play his absence does not constitute structural error). The witness whose testimony was being read was also absent, and thus the right of confrontation from which the right of presence is derived in this context, *see Bustamante v. Eyman*, 456 F.2d 269, 273 (9th Cir.1972), had ceased to be germane. Admittedly, Hegler could have objected to inaccuracies in the readback [2], or protested against any impropriety on the court reporter's part; but any mistake or lapse that may have tainted the jury's decision is capable of being quantified and assessed in an evidentiary hearing. *See Rushen*, 464 U.S. at 119, 104 S.Ct. at 456 (prejudicial effect from the violation of a defendant's right to be present at trial can be determined by a post-trial hearing). In other words, any harm stemming from the violation of Hegler's right to be present during the prosaic reading of the trial testimony is susceptible to harmless error analysis. *Cf. Lee v. Marshall*, 42 F.3d 1296, 1298–99 (9th Cir.1994) (an intrusion into the jury process

normally should be analyzed for its prejudicial impact upon the jury deliberations (citing *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1780, 123 L.Ed.2d 508 (1993))).

 Nor was Hegler's right to be present at the readback "fundamental." The immediate purpose of the proceeding was to let the jury hear for a second time the testimony of a witness; the reading was in all material aspects a sterile event. The jury's attention was directed not at the defendant, but at the absent witness's sworn testimony. In short, the defendant's presence at such a proceeding is unlikely to reap the "gains both symbolic and practical" that inure to the defendant and society from a "public pronouncement . . . which is tailored to the defendant and delivered in his presence." *Hays*, 977 F.2d at 481.

 In sum, we think that before a court can classify a "presence error," the character of the proceeding from which the defendant was excluded must be evaluated to ascertain the impact of the constitutional violation on the overall structure of the criminal proceeding. In so doing, we conclude that where, as here, the deprivation occurred during a proceeding in which the defendant had little ability to influence its outcome, and the harm that resulted from the defendant's absence can be quantified, the constitutional error is a trial error, amenable to harmless error analysis.

### 3. *Harmless Error Analysis*

 After the Supreme Court's decision in *Brecht*, a habeas petitioner who challenges a conviction on the basis of a trial error is entitled to relief only if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, —— U.S. at ——, 113 S.Ct. at 1722 (internal quotations omitted). Hegler argues that in his case we should apply the more onerous *Chapman* standard and require the government to show the trial error was harmless beyond a reasonable doubt. *See Chapman*,

---

**2.** Hegler's ability to perform even this limited function is doubtful given the fact that at the time

of the readback no trial transcript yet existed.

386 U.S. at 24, 87 S.Ct. at 828. Hegler contends the panel's decision in *Hegler I* directing the district court to apply the *Chapman* standard to Hegler's case is binding precedent under the law of the case doctrine. We disagree.

The *Hegler I* decision was handed down before *Brecht* was filed. We must apply intervening Supreme Court authority to a subsequent appeal, *United States v. Lancellotti,* 761 F.2d 1363, 1366–67 (9th Cir. 1985), and an exception to the law of the case doctrine acknowledges this reality, *Merritt,* 932 F.2d at 1320. Accordingly, we will review the trial error that occurred during Hegler's state criminal proceedings under the *Brecht* harmless error standard. *See Brecht,* —— U.S. at —— – ——, 113 S.Ct. at 1713–23 (explaining why the *Chapman* standard applies only to direct appeals and not to collateral review).

Our task then is to determine "what effect the error had or reasonably may be taken to have had upon the jury's decision." *Id.* at ——, 113 S.Ct. at 1724 (Stevens, J., concurring) (quoting *Kotteakos,* 328 U.S. at 764, 66 S.Ct. at 1247). Only if the record demonstrates the jury's decision was substantially influenced by the trial error or there is "'grave doubt' about whether an error affected a jury in this way" will Hegler be entitled to habeas relief. *O'Neal v. McAninch,* —— U.S. ——, ——, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995).

Our review of the record convinces us that Hegler was not prejudiced by his absence from the readback of trial testimony to the jurors. The evidentiary hearing conducted by the district court established that the court reporter read the testimony without inappropriate inflection or comment, and that the substance of the readback was not materially different from the witness's testimony at trial. Indeed, there is *no* evidence indicating there was *any* improper conduct during the reading of the testimony to the jury. Under these circumstances, a habeas petitioner is not entitled to relief. *See Lee,* 42 F.3d at 1298–99 (intrusion into jury room by police officers is harmless error under *Brecht* where there is no evidence the jury was improperly influenced); *cf. Bustamante*

*v. Cardwell,* 497 F.2d 556, 557–58 (9th Cir. 1974) (where evidentiary hearing established that nothing prejudicial occurred during the defendant's absence from the replaying of taped jury instructions the error was harmless beyond a reasonable doubt).

Accordingly, we affirm the district court's decision to deny the petition for writ of habeas corpus and to dismiss the action with prejudice.

AFFIRMED.