**Kenneth Duane ROY, Petitioner–Appellant,**

**v.**

**James GOMEZ; John Van De Kamp; and William Merkle, et al., Respondents–Appellees.**

**No. 94–15994.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1995.

Decided June 9, 1995.

1484

Hill C. Snellings, Blackmon & Drozd, Sacramento, CA, for petitioner-appellant.

Margaret Venturi, Deputy Atty. Gen., Sacramento, CA, for respondents-appellees.

Before: GIBSON *, GOODWIN and HUG, Circuit Judges.

Opinion by Judge GOODWIN; Dissent by Judge HUG.

GOODWIN, Circuit Judge:

Kenneth Duane Roy appeals the denial of his habeas corpus petition challenging his 1983 California conviction for first degree murder and robbery. Roy's principal point on appeal is that because the Superior Court's instruction did not conform to the requirements of *People v. Beeman,* 35 Cal.3d 547, 199 Cal.Rptr. 60, 674 P.2d 1318 (1984), the jury was permitted to convict him without finding an element of the crime. *Carella v. California,* 491 U.S. 263, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (Justice Scalia concurring).

### FACTS

On September 13, 1981, Kenneth Roy and one Jesse McHargue, while hitch hiking near Gridley, California, met Archie Mannix and James Clark outside a liquor store and began drinking beer with them. A Gridley police officer observed the foursome in a pickup

truck. The officer stopped the truck and advised the four not to drive.

Sometime after midnight, officers came upon the pickup truck nose down in a ditch. The bodies of Clark and Mannix were found. The bodies showed signs of stabbing. Mannix's body was partly submerged in the ditch water under the truck. His body later revealed evidence of drowning. Both bodies showed signs of having been stripped of clothing, and such clothing as was found showed the pockets turned out. Blood was found on bushes, and papers, not otherwise described, were found scattered near the truck. Roy and McHargue were not present, but were found about 3 a.m. in a nearby restaurant. Both men were wearing wet and muddy clothing.

Roy and McHargue were informed of their Miranda rights and consented to a search of their backpacks. McHargue's pack yielded Mannix's wet moccasins and his vest. After the two men were arrested, a search of Roy produced a Buck knife, $170.52 in cash, and a watch later identified as having belonged to Mannix. Roy was charged with two counts of robbery and two counts of first degree murder.

At trial, Roy did not testify, but the jury heard testimony from two jail inmates who swore Roy had told them of his participation in the killing of Clark and Mannix.

The state's case was structured on two theories to support first degree murder: premeditation and felony murder. The prosecutor argued that Roy and McHargue planned to drive to a remote location, rob and kill both victims, and steal their pickup truck. The prosecution argued that the physical evidence, the testimonial evidence that the victims had money and the defendants had none, and the testimony about admissions Roy allegedly made to jailed informers proved that Roy killed Clark while McHargue was struggling with Mannix, and that after Roy had killed Clark, Roy helped McHargue rob and kill Mannix. The evidence was sufficient to take both theories to the jury. The state also sought a verdict of

---

* Honorable Floyd R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

special circumstances, based on the use of knives in the stabbing deaths of the two victims, but this issue was eliminated in state court proceedings.

The jury found Roy guilty of second degree murder for killing Clark, but found him not guilty of robbing Clark. The jury answered a special verdict "no" on the question whether Roy used his knife, but found him guilty of first degree murder in the killing of Mannix.

Roy now argues, and we agree, that the verdict of second degree murder of Clark eliminates the theory of premeditation in Roy's conviction of first-degree murder. The validity of Roy's first degree murder conviction in the killing of Mannix thus depends on felony murder in the course of aiding and abetting the robbing of Mannix.

## INSTRUCTIONS

The trial court instructed the jury orally and in writing,[1] *inter alia,* "[t]o find that the special circumstance, referred to in these instructions as murder in the commission of robbery, is true, it must be proved: [1] That the murder was committed while the defendant was engaged in or was an accomplice in the commission of a robbery. [2] That the murder was committed in order to carry out or advance the commission of the crime of robbery.... In other words, the special circumstance referred to ... is not established if the ... robbery was merely incidental to the commission of the murder."

The jury was also instructed "if a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of robbery, all persons who ... with knowledge of the unlawful purpose of the perpetrator of the crime aid ... its commission, are guilty of murder of the first degree, whether the killing is intentional, or accidental." CALJIC No. 8.27 (1979).

The jury was further instructed that one "who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and

reasonable or probable consequences of any act that he knowingly aided or encouraged." CALJIC No. 300 as amended by CALJIC No. 4.25.

CALJIC No. 301 as given, reads: "A person aids and abets the commission of a crime if, with knowledge of the unlawful purpose of the perpetrator of the crime, he aids, promotes, encourages or instigates by act or advice the commission of such crime."

■ The *Beeman* error in the above instruction consisted in the failure of the court to tell the jury that an aider and abettor (Roy) must not only know the unlawful purpose of the accomplice (McHargue), but must *intend* to encourage or facilitate the commission of the offense—in this case the robbery of Mannix. *See Beeman,* 35 Cal.3d at 561, 199 Cal.Rptr. 60, 674 P.2d 1318. (*Beeman* had not been decided when the case was tried.)

On direct appeal, the California court of appeal affirmed the felony murder verdict on the theory of aiding and abetting in the robbery of Mannix. The court of appeal found the *Beeman* error harmless beyond a reasonable doubt, and the state supreme court denied post conviction relief in 1989.

The petition for habeas corpus in the district court followed. The district court again found the *Beeman* error harmless beyond a reasonable doubt, saying: "No rational juror could find that Roy aided McHargue, knowing what McHargue's purpose was, without also finding that Roy intended to aid McHargue in his purpose." We agree.

## DISCUSSION

■ The appeal advances the argument that because no *Beeman* instruction was given on intent, an essential element of the crime, *Carella,* requires a new trial. We have in the § 2254 cases collected in *Martinez v. Borg,* 937 F.2d 422, 424 (9th Cir. 1991), refused to find the *Beeman* error harmless beyond a reasonable doubt. But the teaching of the *Carella* line of cases tells us to look to what the jury actually decided,

---

1. The appeal has not challenged minor differences between instructions as read to the jury

and those sent into the jury room in written form.

not what we, as judges, believe the jury would have decided if they had been properly instructed. We have held that if jury instructions omit an element of the offense, (in this case, specific intent) constitutional error results. *See Martinez.*

If the jury returned a verdict from which it could be said that the jury actually made the essential predicate fact finding, then we affirm. Here, the only rational way the jury could have found Roy guilty on a felony murder theory was by making a preliminary predicate factual finding that Roy intended to help McHargue rob Mannix, while knowing that McHargue intended to rob Mannix. It is therefore necessary for us to review the record, the instructions as a whole, and the verdict, to determine whether the jury, despite the incomplete instruction, had to find every material element of the offense in order to return the verdict it returned.

Roy argues the jury could have found that he knew McHargue intended to rob Mannix and helped him do so without necessarily finding that Roy intended to assist in the robbery. Roy, as noted, did not testify. His counsel put on expert evidence in an effort to prove that Roy's mental capacity was impaired by intoxication, as well as by his inherent immaturity and lack of mental acuity. This evidence was introduced to show the jury that Roy was unable to form any intent at all, much less an intent to help McHargue rob Mannix. The state put on evidence to the contrary. The jury was entitled to disbelieve Roy's experts.

Whether or not the *Beeman* instruction had been given, on the evidence in this case, no jury could fail to find that Roy intended to aid McHargue in subduing and robbing Mannix.[2] There was no other rational explanation of the physical evidence and the testimony about Roy's admitted participation in the robberies and murders that could be consistent with the verdict.

Hypothetical and imaginary scenarios perhaps may be contrived to suggest that Roy did not intend to help McHargue rob Man-

nix. But the jury had before it the defense evidence that attempted to cast doubt on Roy's capacity to form any intent, criminal or otherwise, and the jury obviously did not believe that evidence. We conclude, as did the California courts and the District Court, that the only rational route which the jury could have followed to reach the verdict it reached in this case had to include the implicit finding that Roy intended to help McHargue, knowing McHargue's purpose. That verdict was supported by evidence, and was completely rational. *Hegler v. Borg,* 50 F.3d 1472 (quoting *O'Neal v. McAninch,* —— U.S. ——, ——, 115 S.Ct. 992, 995, 130 L.Ed.2d 947 (1995), "Only if the record demonstrates the jury's decision was substantially influenced by the trial error or there is ' "grave doubt" about whether an error affected a jury in this way' will [Roy] be entitled to habeas relief.").

AFFIRMED.

HUG, Circuit Judge, Dissenting:

The majority recognizes that under Supreme Court and Ninth Circuit precedent we must only look to what the jury *actually decided* in determining an essential element of a crime not what we as judges *believe the jury would have decided* if it had been properly instructed. *See Carella v. California,* 491 U.S. 263, 268–69, 109 S.Ct. 2419, 2422, 105 L.Ed.2d 218 (1989) (Scalia, J., concurring); *Yates v. Evatt,* 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991); *Sullivan v. Louisiana,* —— U.S. ——, ——, 113 S.Ct. 2078, 2082, 124 L.Ed.2d 182 (1993); *Martinez v. Borg,* 937 F.2d 422, 424 (9th Cir.1991). However, the majority fails to apply that law to this case.

The majority acknowledges that there was a *"Beeman"* error in the trial court's failure to instruct the jury that, in order to find Roy guilty of aiding and abetting the robbery of Mannix, it must find that Roy *intended* to encourage or facilitate the robbery. Although there clearly is evidence from which a jury *could have* found the requisite intent,

---

**2.** It was not necessary that the jury find that Roy intended to help McHargue kill Mannix. Such a finding could have found support in the evidence, but was not requested, because aiding in

the robbery of Mannix which resulted in his death was a sufficient finding to support Roy's felony murder verdict.

there is no way we can say that the jury *did* find that intent. There is no "predicate" finding from which we can say that the jury actually *found* the requisite intent, as the majority indicates.

The majority simply weighs the evidence and substitutes its judgment because it finds the other possibilities "fanciful." This is the very type of harmless error analysis that is foreclosed by *Carella, Yates, Sullivan,* and *Martinez.*

From the evidence at trial, it was quite possible the jury could have found that Roy's intent in coming to McHargue's aid in the fight with Mannix was to save McHargue from being killed, not to aid in a robbery. Or the jury could have found, among other possibilities, that by fighting with Clark, Roy in fact aided McHargue in a robbery without intending his fight with Clark to have such an effect. Or the jury simply could have found that Roy did not intend to aid in the robbery for whatever reason. The point is the jury did not make the finding, and we as appellate judges cannot supply our finding on an essential element of the crime for one the jury did not make.

A jury finding that Roy intended to aid in the robbery was a necessary finding of an essential element of the charged crime of felony first degree murder. The jury did not make this finding. This error cannot be harmless. I would grant this petition for habeas corpus on the first degree murder conviction for the murder of McHargue. This, of course, would not affect Roy's conviction of second degree murder for the murder of Clark.