TROTT, Senior Circuit Judge,
dissenting:
Even were I to start from the assumption that Judge Fischer’s denial of a continuance to Kloehn in connection with Kloehn’s son’s dire medical condition was an abuse of discretion, I am unable to join in Judge Reinhardt’s opinion. Why? The error, if any, was demonstrably harmless.
Judge Fischer’s decision possibly implicates two constitutional rights, neither of which Kloehn explicitly referenced in the district court. The first right is the Due Process right “to be present from the time the jury is impaneled until its discharge after rendering the verdict.” Shields v. United States, 273 U.S. 583, 589, 47 S.Ct. 478, 71 L.Ed. 787 (1927); see also Kentucky v. Stincer, 482 U.S. 730, 745-48, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987). This right, however, is not absolute or “structural,” and if violated, it is subject to the harmless error rule. Stincer, 482 U.S. at 745-47, 107 S.Ct. 2658 (defendant excluded from a pre-trial competency hearing regarding child witnesses against him); Rushen v. Spain, 464 U.S. 114, 117-18, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983) (defendant not present at conversations during the trial between a juror and the judge regarding the juror’s ability to be impartial); Snyder v. Massachusetts, 291 U.S. 97, 105-06, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (defendant excluded from the jury’s silent visit to the scene of the crime), overruled on other grounds by Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964); Rice v. Wood, 77 F.3d 1138, 1141-45 (9th Cir.1996) (en banc) (defendant’s absence during jury’s pronouncement of sentence after a finding of guilt subject to harmless-error analysis); Hegler v. Borg, 50 F.3d 1472, 1477 (9th Cir. 1995) (defendant’s absence during a read back for testimony requested by the jury was subject to harmless-error analysis). The key question is whether the defendant’s absence from the proceeding impaired the defendant’s opportunity to defend himself against the charges; and this issue “should be considered in light of the whole record.” United States v. Gagnon, 470 U.S. 522, 527, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985).
The second right is the right guaranteed by the Sixth Amendment’s Confrontation Clause to confront witnesses. The purposes of this right are (1) to guarantee the defendant a “face-to-face” meeting with witnesses against him, Coy v. Iowa, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988); and (2) to ensure a defendant an “opportunity for cross examination.” Stincer, 482 U.S. at 739, 107 S.Ct. 2658. A violation of either value of this non-structural right is also subject to harmless-error analysis. Coy, 487 U.S. at 1021-22, 108 S.Ct. 2798. Kloehn’s counsel did not articulate this constitutional concern either.
*1132 With these considerations in mind, I cannot identify any prejudice or harm to Kloehn that arose from the denial of his motion to continue. Judge Fischer’s “error” appears to have been harmless beyond a reasonable doubt in terms of its actual impact on any of Kloehn’s rights protected by the Constitution. Now, of course, his counsel claims — with no support whatsoever in the record — that (1) Kloehn’s testimony on redirect and recross after the denial of the motion and before he left was impaired because Kloehn could not “focus,” (2) Kloehn couldn’t have his face-to-face confrontation with the remaining 10-minute summary witness, (3) Kloehn’s grief interfered with counsel’s ability to prepare for jury instructions and argument, and (4) Kloehn could not be there to assist counsel in connection with responding to the government’s closing argument. All of these naked claims would be fine and dandy — if they were supported in the record with any evidence at all, either direct or circumstantial, but they aren’t. Saying so doesn’t make it so, neither does wishful thinking. Among other factors I consider are that this was the second trial. Kloehn and his counsel — the same attorney who represents him on appeal — had been over all of this once before, including instructions and argument.
All Kloehn’s counsel expressed a specific concern about was the possibility that Kloehn’s son Michael might be called to the stand by the government, but that did not happen. Also, we have a finding of fact by Judge Fischer that Kloehn’s testimony was fine — except that he appeared to be lying. I have read every word of his redirect and recross testimony, which occurred after the denial of his motion, and I cannot find a single instance of confusion on Kloehn’s part, not one. All I find is a series of grossly leading and repetitive questions by his counsel. Effectively, his counsel narrated and regurgitated the defense, and Kloehn agreed with his narration.
I am influenced by exactly what transpired when the question of a continuance first arose, and as it then developed. As is usually the case, the record tells a different story than counsel’s briefs and arguments — which tend to be mostly spin in his client’s favor.
First, Judge Fischer was apparently aware of Kloehn’s Rule 43 Waiver of Presence on file when she excused him from the rest of the trial, noting that there was very little of the trial left. The Rule 43 waiver, signed by both his counsel and Kloehn says inter alia,
The undersigned defendant requests the Court to proceed during every absence of his of which the Court may permit pursuant to this waiver; agrees that his interests will be deemed represented at all times by the presence of his attorney, the same as if the defendant was personally present in court; and further agrees to be present in person in Court ready for trial on any day and hour which the Court may fix in his absence.
Kloehn’s counsel did not protest what had just happened. He said “... we are in this situation, and we will muddle through.” Again, the only thing counsel expressed concern about was Kloehn’s son Michael, but, as I indicated, Michael did not take the stand.
Did counsel raise an objection that Kloehn was forced by Judge Fischer’s adverse ruling to forego his right to a face-to-face meeting with any witness? No. Did counsel protest that somehow his client’s absence would interfere with counsel’s ability to cross examine any witness? No. Did counsel point to any precise problems with the instructions that Kloehn needed to be present to rectify? No. Did he indicate he needed Kloehn to be present to prepare for or to respond to argu *1133 ment? No. He just rolled with the punch. What he said after Kloehn’s testimony and after the beginning of the summary witness’s testimony was,
Counsel for Mr. Kloehn:
Your Honor, I don’t think the government can get done today [with the final summary witness]. And, if Mr. Kloehn left right now, he might be able to catch the 2:45 flight that I mentioned to your Honor before.
If he can’t be here tomorrow morning, I would waive his appearance, but it’s clear they are going to need ...
Counsel for the government:
I was not going to be publishing anymore of the underlying exhibits just to try to move it along more quickly.
The Court:
Do you want to just stop?
Counsel for Mr. Kloehn:
Do you mind?
The Court:
Fine.
After a sidebar conference, the court excused the jury, and the court said — clearly in reference to what happened at the unreported sidebar — “I understand Mr. Kloehn is going to waive his appearance hereafter. He is certainly invited to join us at any time, but he is not required to be here. Is there any rule that he has to be here for the verdict?” Counsel responded, “Your Honor, I don’t believe so. Depending on how things go, obviously he would like to be. But if they go the other way, his situation really is in extremis.” Why did counsel waive Kloehn’s presence if he has real constitutional objections? Counsel did not say that the waiver was involuntary. Also, on this record, it’s not altogether fair to say that Judge Fischer “excluded” Kloehn from anything. The defendant relied on his Rule 43 Waiver and left.
Then, counsel said he had a few jury instructions he was still working on, but that they were in his office on his word processor. He did not say a word about needing Kloehn to help him. He asked the court for a recess to retrieve the instructions, planning to return at 3:30 p.m. without going over them with his client. Because of “traffic” he did not return in time, but he did deliver his instructions to the Clerk.
The next day, Day 12 of the trial, the court discussed counsel’s proposed additions to the instructions. At the end of this discussion, counsel asked to suspend the proceedings for one day, claiming “in view of what happened to Mr. Kloehn ... it’s been extremely hard for the defense to prepare for the closing argument today, for this jury instructions matter and so forth.” But, there was no showing whatsoever that this was anything more than one of counsel’s many diaphanous claims, without any evidence or substance to back them up. He did not elaborate on his concerns.
The witness whose testimony began while Kloehn .was there and finished the next day in his absence was IRS Revenue agent Carol Bennett. Her testimony related only to a “books and records” summary chart (exhibit 1008) that listed the movement in 1993-1994 of money from the Kloehn Company to Exeter in Grand Cayman and then back to Kloehn for the building of Kloehn’s facility in Las Vegas. Counsel did not attack anything on the chart. He did not deny that any of the transactions shown on the chart in fact took place. All he did was point out on cross what the chart did not show, i.e., Kloehn’s (1) knowledge of what was going on, (2) his willfulness or state of mind, (3) any advice he may have received from attorneys, accountants, or other financial professionals:
Counsel for Mr. Kloehn:
*1134 Now, was — again, I think we covered this, but you are not testifying about any aspect of Mr. Garth Kloehn’s knowledge at the time of any of these events; correct?
Witness: Correct.
Counsel: Or his willfulness or state of mind?
Witness: Correct.
Counsel: Or what advice he got from attorneys, accountants or other financial professionals; correct?
Witness: Correct.
In summary, nothing the witness said involved Kloehn’s state-of-mind defense.
Counsel’s final argument to the jury was roughly three hours long. Nowhere does it appear that his defense was affected at all by Kloehn’s absence.
Insofar as the merits and the “whole record” weigh in this calculation, Gagnon, 470 U.S. at 527, 105 S.Ct. 1482, Kloehn was charged with a transparent seam which anyone with an IQ over room temperature would have seen as illegal. The expenses he claimed were spurious, and the tax free laundering back to him was a smoking gun plus a bullet hole in his defense.
Bottom line? Where’s the beef? Where’s the prejudice? Where’s the damage?
I respectfully dissent.